## DUNLAP & CO. v. CODY.

1. **Jurisdiction:** FRAUD IN OBTAINING: FOREIGN JUDGMENT. If a person, residing in one jurisdiction, be induced, under false pretenses or representations, to come into another, for the purpose of there getting service upon him, the jurisdiction thus acquired will be held to have been fraudulently obtained.

2. —— DEFENSE: JUDGMENT. Such fraud in obtaining jurisdiction of the person of defendant will vitiate the judgment.

3. —— In a case of this kind it is not incumbent on the defendant to appear before the jurisdiction where the action was commenced and set up the facts showing the fraud; but he may, having failed to appear in the original action, plead them in a subsequent action on the judgment, commenced in the jurisdiction where he resides.

4. —— ACTS IN FRAUDUM LEGIS. It seems a judgment may be impeached for fraud when obtained in *evasion* of the courts of the place where it is sought to be enforced.

5. **Practice:** DEMURRER. Where a demurrer to an answer is overruled, and judgment rendered against the plaintiff thereon upon his failure to plead over or prosecute his suit, he will not, after appeal, be allowed to withdraw his demurrer and proceed to trial on the merits.

*Appeal from Lee Circuit Court.*

FRIDAY, APRIL 7.

SUIT upon a judgment rendered by the circuit court of Hancock county, Illinois, for the sum of $1,145.31. The defendant in answer denies any indebtedness, and alleges that the note upon which judgment was obtained was executed in Ohio on the 5th day of March, 1855, and at the time suit was instituted thereon was barred by the statute of limitations; that plaintiffs and their attorneys, in order to avoid the statute of limitations of the State of Iowa, and obtain jurisdiction of the person of defendant in the State of Illinois, fraudulently represented to defendant that one Hiatt, with others, was about to erect an elevator at Carthage, in Hancock county, Illinois, to cost

between $30,000 and $40,000, and induced defendant, who is a carpenter, to go to Hancock county for the purpose of looking at the site of said elevator. That they had the sheriff of Hancock county in waiting, and that, as soon as defendant stepped from the cars at Carthage, the said sheriff served him with a summons in said cause. That the proposal of building the elevator was a pretense made for the purpose of inducing defendant to go to Illinois where plaintiffs could see him, and avoid the bar of the statute of limitations of the State of Iowa. Afterward, as an amendment to this answer, the defendant claimed a sum alleged to be due as a cross demand. To this answer the plaintiff filed the following demurrer, to wit:

1. "That said action does not set forth a substantial cause of defense.

2. "That plaintiff's action being based on a judicial record, which shows by its transcript that defendant was duly served with notice, and had his day in court, he cannot be allowed to defend against said record, on or because of any alleged defense which might, or could, or should have been made on the trial of the judgment sued on.

3. "Defendant is estopped by the record sued upon, from any plea or answer, in bar of payment, or statute of limitations, or any other plea tending to show that the judgment should not have been rendered that was rendered.

4. "That the answer of fraud is not allowable as a defense against the judgment and record sued on."

The demurrer was overruled and judgment entered for defendant for costs. Plaintiffs appeal.

*McCrary, Miller & McCrary* for the appellants.

*Gilmore & Anderson* for the appellees.

DAY, Ch. J. — I. Do the means used to obtain jurisdiction of the person of defendant, in the courts of Illinois,

**1. JURISDIC-**
**TION: fraud in**
**obtaining.** amount to fraud? It would seem that this question scarcely needs discussion. Fraud consists in the *suggestio falsi* or the *suppressio veri*. Both exist here. The false statement was made to defendant by plaintiffs' attorney that Hiatt and others were about to erect an elevator in Hancock county, Illinois, to cost between $30,000 and $40,000; and the defendant, being a carpenter, was induced to go to Illinois to look at the site of the proposed structure. The truth, that the object in getting defendant into the State of Illinois, was to obtain jurisdiction of his person in an action against him, and avoid the bar of the statute of limitations of the State of Iowa, was suppressed. It cannot be supposed that if the real facts and purpose had been made known to defendant he would voluntarily have gone to Illinois, and subjected himself to an action upon this demand, long since barred by the statute of limitations of the State in which he resides. Counsel representing plaintiff in this court, and who, it is but justice to say, were not concerned in obtaining the judgment in Illinois, do not seriously controvert the position, that the mode of obtaining jurisdiction was fraudulent. They concede that it "smells somewhat of fraud." The only palliation which they are able to offer is the suggestion of a doubt whether it may not be considered a "pious fraud" in which "the end justifies the means."

We do not think that it is entitled even to that small measure of charity.

An enlightened and just administration of the law, no less than sound public morals, condemns such practices, and demands that the client whose cupidity could sanction, and the attorney whose venality could execute, such a purpose, should alike be disgraced.

II. Does the fact that the jurisdiction of the person of the defendant was obtained by fraud constitute a defense
**2. —— defense:**
**judgment.** to an action upon this judgment? It is the recognized law of this State that, when juris-

diction is properly acquired, fraud in the obtaining of a foreign judgment is a good defense to an action thereon. *Rogers* v. *Gwinn*, 21 Iowa, 59, and cases cited.

If, then, fraud may be shown to defeat a recovery upon a foreign judgment, when the jurisdiction is undisputed, why should not fraud in obtaining the jurisdiction be followed by like consequences? It is a familiar doctrine in this State, that one sued upon a foreign judgment may show that he was not, in fact, served with process, and that the court had no jurisdiction of his person. *Pollard* v. *Baldwin*, 22 Iowa, 328, and cases cited.

It is also now the settled doctrine, both in the federal and State courts, that one sued upon the judgment of a sister State may successfully defend, by showing that the attorney who entered an appearance for him had no authority to do so. *Harshy* v. *Blackmarr*, 20 Iowa, 172, and cases cited. Yet this is simply a recognition of the doctrine that, in an action upon a foreign judgment, the defendant may show that the jurisdiction was wrongfully obtained.

And if this may be done in cases where the plaintiff is in no way connected with the entering of the appearance by the attorney, for much stronger reasons should it be allowed where the plaintiff, or the plaintiff's attorney, procures the appearance to be entered for the purpose of conferring jurisdiction. The existence of such facts would constitute a fraud, and present a case more nearly analogous to the one now under consideration.

A reference to a few adjudged cases will show the extreme jealousy with which courts have ever guarded their process, and how uniformly they have recognized the doctrine that no legal right can be founded upon an act of fraud or oppression.

In the case of *Wells* v. *Gurney*, 8 Barnw. and Cress. 769; S. C., 15 E. L. R. 336, the defendant, by the contrivance of plaintiff's attorney, was arrested on Sunday,

on a criminal process, for the purpose of effecting his arrest on civil process, and he was detained in custody until Monday, and then arrested on civil process. The court ordered him to be discharged.

In the case of *Lutten* v. *Benin*, 11 Mod. 50, Holt, Ch. J., said : " If a man is wrongfully brought into a jurisdiction and there lawfully arrested, yet he ought to be discharged, for no lawful thing, founded on an unlawful act, can be supported."

In *Wingate* v. *Insley*, 12 Pick. 270, Shaw, Ch. J., said : " There are many cases where arrests on civil process are held to be unlawful and void, in consequence of the unlawful means used to place the party in a situation to be arrested, or where he has been unlawfully detained until he could be lawfully arrested, or other unlawful means used to obtain the custody of his person."

In the case of *Barlow* v. *Hall*, 2 Ans. 461, a party was confined without writ, until a writ could be obtained, and then arrested upon it. The court said : " The defendant has been seized illegally ; that illegal confinement has been continued under our process. He must be discharged."

In *Loveridge* v. *Plastow*, 2 H. Black. 29, a capias was made returnable on Sunday, to wit : in three weeks of Easter, April 29. At eight o'clock on Monday morning, April 30th, the defendant was arrested and detained by the officer till ten o'clock, at which time the plaintiff obtained a renewal of the writ. The defendant was ordered to be discharged.

In the case of *Birch and another* v. *Prodger and another*, one Plaisted was seized and detained by force without writ until an officer with a writ could be sent for. Being arrested upon such writ by the officer, he was held entitled to his discharge.

In *Lyford* v. *Tyrrell*, 1 Ans. 85, the defendant came to the plaintiff's house on Sunday, where he was detained by

plaintiff till Monday, and then arrested on a debt of £500. In answer to a motion for his discharge, the plaintiff showed that at the time of his arrest on Monday, upon conditions which plaintiff had performed, the defendant agreed to waive every benefit of the forcible detention. The court said : "We cannot distinguish this from an arrest on Sunday, which is purely void, and no subsequent consent of the defendant can make it good."

And when one is unlawfully arrested, and afterward, before he can get his discharge, he is arrested upon another writ, he is entitled to be discharged from the latter arrest, because made only through the medium of the former. *Ex parte Wilson*, 1 Atk. 152.

Referring to these authorities, SHAW, Ch. J., in the case cited, *supra*, said: "These cases, therefore, seem to establish the general principle that a valid and lawful act cannot be accomplished by any unlawful means, and whenever such unlawful means are resorted to, the law will interpose and afford some suitable remedy, according to the nature of the case, to restore the party injured by these unlawful means to his rights."

The case of *Loyd* v. *Munsell*, 2 P. Wms. 74, is 'in point. In that case the plaintiff brought a bill to redeem certain property which the defendant claimed as having been obtained under a decree in his favor. The bill alleged that the defendant, before obtaining said decree, procured a man to make a false affidavit that the plaintiff in this action was gone beyond sea, upon which the defendant got an order from the court that a service on the then defendant and clerk in court, be good service, whereas, in fact, the defendant was then living publicly in the next town, but on this false affidavit, and the order made thereon, the cause was heard *ex parte* and confirmed absolutely, upon which decree the party so moving foreclosed, and the estate was obtained. The defendant (the party so obtaining this decree) set up, in his defense, in his plea,

this decree of the court and report, both made absolute, signed and enrolled. The lord chancellor said: "All these circumstances of fraud ought to be answered, which, so far from doing, the defendant only pleads that report and decree as a bar which the plaintiff seeks to set aside; and, the decree being signed and enrolled, the plaintiff has no other remedy, and if these matters of fraud laid in the bill are true, it is most reasonable that the decree should be set aside." To the objection of defendant's counsel that the decree should be set aside by original bill, his lordship replied: "Such a gross fraud as this was an abuse on the court and sufficient to set any decree aside." See, also, *Kennedy* v. *Daly*, 1 Scho. & Lef. 355; *Pomeroy & Co.* v. *Parmlee*, 9 Iowa, 140. Now, in view of these authorities, we apprehend it would be admitted that if the plaintiff had seized the defendant and carried him by force to Illinois, and there caused him to be served with a summons, the jurisdiction thereby acquired would be wrongful. Yet the only difference between the case supposed and the one under consideration is, that in that case the volition would be overcome by physical force, while in this the will was rendered passive by false and fraudulent suggestions. Had the truth been known to the defendant, he would have been just as unwilling to have gone to Illinois in one case as the other, and we are unable to perceive why the cases should not be followed by similar consequences.

It is claimed that the defendant should have appeared in pursuance of the summons, and there moved the court to dismiss the proceedings in consequence of the fraud? It may well be doubted whether such appearance, even for the purpose of objecting to the service, would not have placed him within the jurisdiction of the court for all purposes connected with the trial. Such, certainly, would be the effect of such appearance in this State. Rev., § 2840. But conceding that he would not be visited with such consequences in the courts of Illinois, and that there

the defendant might be relieved from the effects of an insufficient service, such relief, in this case, could be predicated only upon the fraud of plaintiff in procuring the service. Why drive a defendant to the necessity of traveling, it may be a thousand miles, to put in an appearance at court, and suggest to the court that it has no jurisdiction in consequence of the fraudulent act of plaintiff in procuring service? Under such a construction, it would, in many cases, cost more to make defense than to allow judgment to be taken and permit the fraud to triumph.

If the fraud be conceded, why is it not a good defense to an action upon the judgment? Or is it claimed that the remedy of defendant is to go to the courts of Illinois, and there proceed by bill in equity to set the judgment aside, or restrain its collection? To this position the same suggestions are applicable. If such a bill could be sustained in the courts of Illinois, and yet the facts which would afford affirmative relief there do not constitute a defense to the judgment here, it follows that a judgment of a court in Illinois is entitled to *greater* faith and credit in Iowa than would be conceded to it in the court of the State where it was rendered. Such consideration to the judgments of a sister State, the constitution and acts of congress do not require. *Rogers* v. *Gwinn*, 21 Iowa, 59. It seems clear, either that the defendant would be entitled to no relief in the courts of Illinois, or that he is entitled to it here. Now, for the first time, is this judgment made the foundation of a legal demand against the defendant. Against this demand he interposes the unlawful manner in which the judgment was obtained. He is guilty of no laches in making his defense. And, as we entertain no doubt that a court of Illinois would, if the facts alleged in this answer were proved, perpetually enjoin the collection of this judgment, we are clearly of the opinion that the defense here

interposed should bar a recovery thereon in our own courts.

III. There is another consideration in this case which merits a passing notice. The answer alleges that the note 4 —— acts in sued on was barred by the statute of limita-fraudum legis. tions of this State, and that the defendant was decoyed into the State of Illinois for the purpose of obtaining jurisdiction there, and evading our statute of limitations. The judgment thus obtained, the plaintiff now seeks to make the foundation of a legal demand here. It has been held that a judgment may be impeached for fraud, or when it is obtained in evasion of the courts, where it is sought to be enforced. *Jackson* v. *Jackson*, 1 Johns. 424; *Buford* v. *Buford*, 4 Mumf. 241; *Borden* v. *Fitch*, 15 Johns. 421. In *Jackson* v. *Jackson*, 1 Johns. 424, it was said: "It may be laid down as a general principle that, whenever an act is done *in fraudum legis*, it cannot be the basis of a suit in the courts of a country whose laws are attempted to be infringed." But without pursuing this inquiry further, we are of opinion that the demurrer was properly overruled, for the reasons before expressed.

IV. Appellant asks that, if his errors be not sustained, he may be allowed to withdraw his demurrer and proceed to 5. PRACTICE: trial on the merits. We know of no warrant demurrer. for such a procedure. Section 3086 of the Revision provides that "upon a decision of a demurrer, if the unsuccessful party fail to amend or plead over, the same consequences shall inure as though a verdict had passed against the plaintiff, or the defendant had made default."

Here the plaintiff, upon the overruling of his demurrer, failed to plead over or prosecute his suit. He stood upon his demurrer, and thus was in the same attitude as though a verdict had been returned against him. Standing in this attitude it was not only the right, but the duty of the court

below to render judgment against him. From the conse-
quences of his position, thus voluntarily assumed, this
court cannot relieve.

Affirmed.