TOOF, McGOWEN & Co., Appellants, v. WILLIAM FOLEY, Appellee.

1. **Jurisdiction:** FRAUD: VALIDITY OF JUDGMENT. If a person be induced, by false representations, to go into a state other than that of his residence, for the purpose of there getting service of summons upon him, the jurisdiction acquired by such service will be held to have been fraudulently obtained, and the judgment based thereon will be void.

2. **Foreign Judgment:** FRAUD: DEFENSE IN THIS STATE. Where jurisdiction of the person of the defendant in an action in another state was obtained by fraudulently enticing him into that state, and he was then told by the plaintiff that nothing would be done in the case until certain other matters had been adjusted, and with that understanding, and at the suggestion of the plaintiff, he filed an answer, and thereafter in violation of that understanding, and without the knowledge of the defendant, the cause was prosecuted to judgment against said defendant, *held*, that the fraud thus practiced was a good defense to an action brought upon such judgment in this state. In such a case the appearance of the defendant is not a waiver of the fraud by which jurisdiction was obtained.

*Appeal from Jones District Court.*—HON. J. H. PRESTON, Judge.

TUESDAY, JANUARY 17, 1893.

THIS is an action at law based upon a judgment of the circuit court of Shelby county, in the state of Tennessee. There was a trial before the court, a jury having been waived, and a judgment was rendered for the defendant for costs. The plaintiffs appeal.— *Affirmed.*

*Remley & Ercanbrack*, for appellants.

*J. W. Jamison*, for appellee.

ROTHROCK, J.—It is not disputed that the judgment upon which the action is founded was actually rendered by a court of record in the state of Tennessee. Indeed, the record shows that the defendant was duly served with process in Tennessee, and that an answer was filed, and judgment was rendered in proper form. It is not necessary to set out the answer by which the validity of the judgment was put in issue. The substance of the defense was that the defendant was a resident of this state, and that the plaintiffs fraudulently induced him to go to the state of Tennessee, so that the service of a summons could be made upon him, and that after he went there, and the action was commenced, the plaintiffs induced him to allow said action to remain pending, with the understanding that no further action should be had therein until a settlement of certain claims growing out of the construction of a railroad should be had, and that, in violation of said understanding, the plaintiffs, without the knowledge of the defendant, took judgment against him. Other facts are averred in the answer, but they are not material and do not constitute a defense. And there was a motion and demurrer attacking the answer, which were overruled. We need not determine the questions raised by counsel for the appellants upon this ruling of the court. The exception to the ruling was waived by filing a reply. There is no real question in the case, except that arising upon the claim of the defendant that the judgment was obtained by fraud. All of the rulings of the court upon the admission and exclusion of evidence, which are complained of by the appellants, may be disposed of by the consideration that the evidence objected to was competent upon the question of

fraud, or that said rulings were without prejudice to the appellants.

I. Both parties filed abstracts of evidence, and there is a conflict between them as to their correctness,

1. JURISDICTION: fraud: validity of judgment.

which has compelled us to resort to the transcript. From our examination of the evidence, we find that the partnership of J. S. McTighe & Co. was engaged as railroad contractors, with its headquarters at Memphis, Tennessee. The firm was composed of J. S. McTighe, J. L. McKee, and Timothy Sullivan. They were large contractors, and in the year 1888 they were engaged as contractors in constructing the Louisville, New Orleans & Texas Railroad. They sublet the clearing, grubbing and grading of part of the line to the defendant, William Foley, and to John Foley, who were residents of this state. The partnership of Toof, McGowen & Co. was composed of John S. Toof, E. L. McGowen, J. S. McTighe and W. G. Patterson. This firm was in business at Memphis as grocers and cotton factors. When the Foleys entered into their contract, an arrangement was made with McTighe—who, it will be observed, was a member of both of said partnerships—that certain supplies should be furnished by the plaintiffs herein to the Foleys, as the work progressed, and that payment therefor should be made by deducting from the estimates made on the Foleys' contract. In fact, the plaintiffs herein were the bankers of McTighe & Co., so far as pertained to the railroad contract. The work was carried on, and payments and settlements made in this way, down to about the time of the completion of the work. As one witness testified, the "estimates were taken on the first of each month, returned to J. S. McTighe & Co., and they deducted the store bill out of it, and paid us the balance of the money. I mean, by 'they,' Toof, McGowen & Co. and

J. S. McTighe & Co. We received money on the first estimates from Toof, McGowen & Co."

There is no real controversy as to the above facts. We will now proceed to state other facts, which, although not conceded to be true, yet are supported, either by a preponderance of evidence, or are based upon such evidence as would authorize a finding of their truth in an action at law tried by a jury, or by the court where a jury has been waived. J. S. McTighe was an active member of both partnerships, and he made an agreement with the Foleys that they should have supplies from the plaintiffs herein in advance of the estimates, and that payment should be made therefor out of the estimates. When the work was about closed up, the Foleys had drawn supplies to the extent of nearly three thousand dollars, which had not been paid for. A difference arose between the railroad company and McTighe & Co. and the Foleys about the amount due to the Foleys upon the completion of the work. But there was a much larger sum due to the Foleys from McTighe & Co. than would be necessary to pay for the supplies. William Foley and John Foley came to their homes in this state. After the lapse of some time, McTighe wrote a letter to the defendant herein, in which he said that they (McTighe & Co.) were then ready to make settlement, and requesting the Foleys to go to Memphis "right away." There is some dispute as to whether this letter was written by McTighe, but the court was fully warranted in finding that it was written by his hand. The defendant went to Memphis, and settled some claims for cotton destroyed in the prosecution of the work, and then McTighe claimed that there was four thousand, eight hundred dollars for bridging, which should be charged to the Foleys. This was an unwarranted claim, because the Foleys did not contract to do any bridging. There was then actually due to the Foleys over five thou-

sand dollars on their contract. Shortly after this claim was made by McTighe, and on the same day, and within one hour, the summons or original notice in this suit was served upon the defendant. It is not claimed by the plaintiffs that McTighe had no power or authority, as a partner in the plaintiff firm, to agree to furnish supplies for the graders on the railroad, and take pay therefor from the estimates. The course of business between the parties would indicate that he was authorized to do so. This being the fact, there was nothing due to the plaintiffs from the Foleys, because McTighe & Co. had enough, and more, in their hands, to pay the plaintiffs' claim. If this were an original proceeding, by which the plaintiffs were seeking to recover on their account, no court or jury would be authorized, from the evidence, to find for the plaintiffs, because the evidence shows, beyond much question, that the claim for bridging was unfounded.

Taking all this evidence together, the finding that McTighe wrote the letter to induce Foley to go to Memphis as a mere pretense by which he could obtain service upon him is well founded. It is true, it is not absolutely conclusive that such was his purpose, but it is a fair finding from all the evidence in the case. This being true, the case, so far as the facts attending the obtaining jurisdiction of the person of Foley are involved, is fairly within the rule of the case of *Dunlap v. Cody*, 31 Iowa, 260, where it was held that if a person residing in one jurisdiction be induced, under false pretenses or representations, to come into another, for the purpose of there getting service upon him, the jurisdiction thus acquired will be held to have been fraudulently obtained, and the judgment is void.

II. There is another feature of the case necessary to be considered. The record of the suit upon which the 2. FOREIGN judgment: fraud: defense in this state. judgment was obtained shows that an answer was filed therein in behalf of the

defendant. The defendant, in his answer in this action, avers that the answer in the original case was filed under an arrangement with McTighe as follows: That "after said notice had. been served it was understood that nothing would be done in said case until the difference existing between McTighe & Co. and the Louisville, New Orleans & Texas Railroad and the Foley Bros. had been disposed of, suggesting that he simply file an answer, and the case could await an adjustment of the matters aforesaid; and the defendant relied upon this, and filed an answer, and supposed the matter would remain. But the plaintiffs, acting in bad faith, by means of false pretenses, and falsely, as aforesaid, obtained said judgment." It is claimed with confidence by the appellants' counsel that because of the filing of the answer in the original case the defendant can not be allowed to question the judgment for fraud.

We do not think that, under the facts in this case, this position of the appellants can be sustained. It is true there are cases which hold that an appearance waives all objections to an original notice. Indeed, our statute so provides. Code, section 2626. But, where it is claimed that a judgment was obtained by fraud, an appearance is not always conclusive upon the defendant. In the case of *Rogers v. Gwinn*, 21 Iowa, 58, after a full consideration of the question, the following rules were announced, as shown by the headnotes to the opinion: "In an action in this state upon a judgment rendered by a court of a sister state, any state of facts which would be sufficient to avoid the judgment in the state in which it was rendered may be pleaded as a defense to the action in this state. That the judgment was obtained in another state after the plaintiff had agreed with defendant that he had no sufficient cause of action, and that he would dismiss his suit, and when the defendant, relying upon such agreement, believing that the suit had been dismissed, the record failing to

show that the defendant or his attorney was present at the trial, is a sufficient defense to an action on the judgment in this state." In that case, as in this, the defendant filed an answer. Something is claimed for this case on the ground that the judgment record shows that the defendant was present. The record recites that the "cause was submitted to the court by consent, without the intervention of a jury." It does not state by whom the consent was given, nor does it recite that Foley, or any one for him, was present. Upon the authority of the last cited case, we think there was a sufficient showing that the judgment was obtained by fraud; and we do not regard the fact that an answer was filed as at all conclusive against the defendant. If the act of McTighe, a party in interest, in procuring Foley to leave his home and go to Tennessee, was fraudulent, the subsequent suggestion that he should file an answer might be held to be another device to obtain and hold jurisdiction of him. There was evidence in the case from which it might well be found that there was an agreement that no action would be taken in the suit until the matters in dispute between McTighe & Co. and the railroad company and the Foleys should be adjusted.

III. It appears from the record that after the testimony was all introduced, and pending the announcement of the decision of the case by the court, the plaintiffs asked permission to withdraw the cause and dismiss their action. An objection was interposed by the defendant, and the right to dismiss the case was denied. There was no error in this ruling. The cause was finally submitted to the court before the motion to dismiss was made, and it was not only finally submitted, but the court was announcing the decision. The application to dismiss came too late. Code, section 2844; *Dunn v. Wolf*, 81 Iowa, 688. The judgment of the district court is AFFIRMED.