D. J. HOWARD, Appellant, v. A. F. CAVE and LAURA CAVE, Appellees.

**Real property:** SPECIFIC PERFORMANCE: EVIDENCE. In this action for specific performance of an oral agreement to execute a mortgage on an exchange of property the evidence is held to sustain plaintiff's contentions.

**Equitable actions:** APPEAL: TRIAL DE NOVO. The rule that findings of fact by the court in a law action have the force and effect of a verdict do not apply with equal force in an equitable action, which is triable *de novo* on appeal. In such cases it becomes the duty of the appellate court to pass upon the evidence and determine the rights of the parties.

**Specific performance:** ALTERNATIVE RELIEF. Where the defendants as part of a contract of exchange of real property agreed to execute a mortgage on the property received to secure a balance due from them, which they refused to do, plaintiff was entitled to a decree for specific performance or to the establishment of a vendor's lien as alternative relief.

**Practice:** DISMISSAL OF ACTION. Where a cause involving a cross-petition has been tried and submitted the defendant is not then entitled as a matter of right to dismiss the cross-petition without prejudice.

**Real property:** EXCHANGE: FRAUD: EVIDENCE. The evidence in this action is reviewed and held sufficient to sustain a finding of the fraudulent valuation of plaintiff's property, which was transferred to defendants in performance of a contract of exchange.

*Appeal from Harrison District Court.*—HON. THOMAS
ARTHUR, Judge.

### SATURDAY, DECEMBER 13, 1913.

PROCEEDING in equity for the specific performance of a
parol agreement to execute a mortgage, or for alternative
relief of establishing a vendor's lien.    *Reversed* and
*Remanded.*

*Cochran & Barrett,* for appellant.

*Roadifer & Roadifer* and *C. A. Bolter,* for appellees.

WITHROW, J.—I. In March, 1911, the appellant con-
veyed to the appellees one hundred and sixty acres of land
in Harrison county. The transaction was the result of a trade,
in which there was conveyed by the appellees to the appellant
a section of Canada land, on which the Caves with one Hil-
dreth were at the time residing.  Being a trade of lands, the
valuation fixed as the basis of the exchange and adjustment
of the difference was not the fair market value; but as shown
by the evidence, there was that lifting in price which is us-
ually incident to such transactions.   Against the Harrison.
county land at the time of the trade were two outstanding
mortgages amounting to $11,642.   These it was agreed were
to be assumed by Cave as a part of the purchase price, which
was fixed at $20,000, and, after deducting the price fixed on
the Canada land, there remained a balance of $2,188 due
from Cave to Hildreth, and by payment this balance was
reduced to $2,000, for which amount Cave gave his promis-
sory note to Hildreth, payable January 1, 1920, with the
usual provisions as to default and right of action in the event
the interest, which was at 6 per cent., payable semiannually,
was not paid when due.  This proceeding is based upon the
claim that there was an agreement between the contracting
parties that to secure the $2,000 note Cave would execute a

mortgage upon the real estate conveyed to him which would, of course, be subject to the existing mortgages. The petition set out in detail the transaction between the parties, and the prayer was that decree be entered for specific performance, requiring Cave and his wife to execute such mortgage, and also that a vendor's lien be established against the real estate with right of foreclosure postponed until the debt should become due. The defendants denied any agreement to execute a mortgage, and by way of cross-petition pleaded misrepresentation as to the quality of the land conveyed to Cave by Howard, and asking affirmative judgment for $3,000, being the difference between the amount of damage claimed, $5,000, and the amount of the note given to Howard. The trial court found and decreed that plaintiff was not entitled to a decree as prayed, and also announced as a part of its finding that the defendants, the appellees, had not shown themselves entitled to damages, upon which at their request their cross-petition was dismissed without prejudice.

II. Shortly prior to the transaction which is the basis of this proceeding, Howard had entered a contract of trade with Cave and Hildreth, who were then the owners of the Canada land. Under that contract, which was in its terms not materially different from the one now considered, it was agreed that for the difference in the fixed values of the land, less incumbrances, Cave and Hildreth should execute their note, and give a mortgage on the Harrison county land as security for its payment. This contract was not carried out because of a refusal by the wife of Hildreth to join in the mortgage; and afterwards, by some transaction between Hildreth and Cave, the latter having in some manner adjusted with Hildreth the question of ownership as between them of the Canada land, Cave then contracted with Howard for the exchange of the properties, and for settling the difference, but whether there was at such time an agreement that Cave should execute a mortgage as security for the $2,000 note is a question which

1. REAL PROP-
ERTY: specific
performance:
evidence.

is the subject of sharp dispute, and as to which the testimony of the two parties is in direct conflict. Howard testified that such was the agreement; Cave that it was not. Howard testified that subsequent to the time it is alleged such agreement was made he talked with Cave about it, and that the latter promised to execute the mortgage, but that his wife was not in town at the time and he could not. He also testified that he talked with Cave over the telephone, and that the latter said his wife would be in soon, and the matter would then be fixed up. Both of these conversations are denied by Cave without qualification. Cave testified that he did not sign the note for $2,000 when the deal was closed; such not having been done until November, the day before Cave left Canada for Iowa. He claims that Howard told him that if he would reduce the difference down to $2,000, and buy Hildreth out he would take his individual note for the amount. This conversation evidently occurred at or near the time the contract of sale was in contemplation, and not when the note was made. We have referred to the claim made by defendants in their cross-petition that Howard had misrepresented the character and quality of the land. In his testimony Cave said ''I would have executed the mortgage only for the misrepresentation about the land;'' and again, ''I told him (Howard) that I would not give a mortgage because the land was not worth what I paid for it.'' He also testified: ''When we took the deal off of Hildreth's hands, I wanted the old mortgage back. Mr. Howard told me he wanted a new mortgage according to the contract in Canada to secure the $2,000, and I insisted on having the old mortgage first; it was my intention to comply with the contract, and I went ahead with my part of it.''

These statements, taken in connection with what is clearly shown as the reason for the failure of the first agreement to which Hildreth and Cave were parties, that Hildeth's wife would not join in a mortgage, throw some light upon the case. As to the original agreement, Hildreth testified,

"Mr. Howard told us he would not take our note for ten years without security." While the appellee Cave rests his pleaded defense upon the denial of an agreement to make the mortgage, his testimony quoted above tends strongly to show that his refusal was based upon the alleged misrepresentation as to the land, and not because of the want of an agreement requiring him to do so. It appears in the record that Cave and his wife did actually execute the mortgage for the balance, which was to be given in the first, or Hildreth transaction; and also that, as testified to by Howard, he offered to take from Cave four notes payable in one, two, three, and four years, for the $2,000 and waive the third mortgage if Cave's wife would sign them, but that Cave chose the longer time, which carried with it the requirement of a mortgage. Admitting this latter testimony to have been denied by Cave in his general, and in some instances specific, denials, we yet must give to it some weight in the light afforded by other facts and circumstances. To it should be added the testimony of William Cheeseman, who is related by marriage to both of the parties, and who was in some degree instrumental in bringing them together in their trade. While not giving specific conversations, he says he talked the matter over several times with them, and always understood there was to be a third mortgage. The evidence which we have set out, much of which is admissions by the appellee Cave, and which is largely without contradiction, is wholly consistent with and largely corroborative of the claim of the appellant, and is entirely out of harmony with the position and denial of the appellees. We are therefore brought to the conclusion that the evidence amply sustains the claim that there was the agreement that a mortgage should be executed to secure the $2,000.

It is urged that the finding of fact by the trial court must be given the force and effect of a verdict of the jury.

The rule upon which appellee relies does not have full appli-

2. EQUITABLE
ACTIONS: ap-
peal: trial de
novo.

cation in causes triable *de novo* in this court; but there necessarily remains with us, in such cases, the right and duty to pass upon the evidence and determine the rights of the parties.

III. From this finding it necessarily follows that appellant is entitled to have established his lien against the property, either by decree of specific performance or a

3. SPECIFIC PER-
FORMANCE:
alternative
relief.

vendor's lien, the indebtedness being for purchase money, unless the record is such as to show that the indebtedness does not in fact exist, or in equity should not be permitted to be enforced. *Allen v. Loring,* 34 Iowa, 501; *Huff v. Olmstead,* 67 Iowa, 598; *Bank v. Brown,* 142 Iowa, 190.

IV. In considering the other branch of the case based upon misrepresentation, we are met with the question that upon the conclusion of the case, when the trial court was

4. PRACTICE:
dismissal of
action.

announcing its findings, which was against both of the parties as to their affirmative claims, the defendants dismissed their cross-petition without prejudice. Appellant contends that the trial court had not the right to allow a dismissal of the cross-petition after a final submission of the case, citing *Dunn v. Wolf,* 81 Iowa, 688. The correctness of this rule is conceded by the appellees, but claim is made that to permit such is within the discretion of the trial court at any time before the final submission of the cause. The record shows that the testimony was closed and the case submitted. Following this, the trial court announced its conclusion, to which we already have alluded, and thereupon adjourned at 11:50 a. m. until 1:30 p. m. Upon reconvening entry was made upon the calendar dismissing plaintiff's petition, following which is the further entry that defendant "at this same time asks leave to dismiss his cross-petition without prejudice," which was then granted. Judgment for costs was entered against the plaintiff. The application to dismiss came too late, for

the record shows a final submission of the case. *Dunn v. Wolf*, 81 Iowa, 688; *Toof v. Foley*, 87 Iowa, 14. We must therefore treat the case in its entirety, and as presented to the court below.

V. While the case is one based upon a deal which was of an apparently speculative nature on one side, the parties to it were not strangers to each other. Cave's wife was a cousin of Howard. Hildreth was his cousin, and Cheeseman, who in some degree aided in the transaction, had also married a cousin of Howard. Cave and Hildreth had formerly resided in Harrison county, but had by trade and otherwise secured the Canada land which afterwards was conveyed to Howard. The latter resided in Logan, Harrison county, and was engaged in real estate and farming. Cave and Hildreth, having become dissatisfied with their venture in Canada, decided to return to Iowa, and sought the assistance of Cheeseman, who was asked by Cave and Hildreth if Howard had anything to trade. This was the beginning of the transaction which resulted in the deal now under consideration. In fixing values the Canada land was priced at $3 per acre above that which the owners had paid for it. The Iowa land was valued in the trade at $125 per acre. While Cave had been a resident of Harrison county, he testified that he did not know the land, and relied upon the representations of Howard. As to such Cave testified as follows: "The trade I and Hildreth had with Mr. Howard was in March, 1911. At that time Mr. Howard said the farm was a good average farm in Harrison county and well worth all he asked for it. He said there was a creek on it, and I asked him in particular about the creek. He said the creek started right on his place, and I understood about the middle of the place, and there wasn't any steep banks to it until you got pretty well to the south end of the place, and he said there was about one hundred and twenty acres in farming. He said the other land was good pasture, two good wells. He said it was worth all

*5. REAL PROPERTY: exchange: fraud: evidence.*

he asked for it, and he traded it to us at $125 per acre."
Hildreth testified: "When we talked over the trade for the
Harrison county land, Mr. Howard said it was a good average
farm of Harrison county, that there was a creek on it, and
there was good improvements, and well worth the money he
asked for it. He asked $125 for it." Upon this subject
Howard testified: "I told the boys that the Harrison county
land was not worth $125 per acre, neither was their Canada
land worth what I was paying them for it. They said they
were not particular about the valuation on the land down
here, if it was just a good farm and had two sets of improve-
ments on it, and if it was in the location I told them. They
said they were thoroughly dissatisfied with conditions in
Canada and would under any conditions come back. I paid
$250 of the amount Mr. Cave was to pay Hildreth for his
equity, so Mr. Hildreth could unload his interest to Mr.
Cave."

Evidence as to value showed that at the time of the trade
the Iowa land was worth, as stated by different witnesses,
from $70 to $100 per acre; the weight of the testimony rest-
ing near the latter figure. The description of the land given
by disinterested witnesses leads us to the conclusion that,
while not land of the higher values which prevail in different
parts of Iowa, it fairly met the statements of plaintiff as to
its character, and we cannot find by the weight of the evi-
dence necessary in such cases that there was fraud or mis-
representation as to its quality. The transaction was a trade.
Values were lifted as to both tracts of land. The Canada
land was priced in the deal at $26 per acre for one half sec-
tion, and $25 per acre for the other. The testimony of wit-
nesses who were residents of Canada and acquainted with
the land and its reasonable value fixed it at from $15 to $16
per acre for one half section, $20 per acre for one quarter,
and $25 per acre for the remaining quarter, or slightly less
than $20 per acre as the average value of the entire tract.
Taking the values shown by the testimony, both of the Iowa

and Canada lands, it appears that there was but slight, if any, difference in the excess of trading values above actual values. From the whole evidence we fail to find facts which warrant the conclusion that the appellant was guilty of misrepresentation amounting to fraud.

VI. With such conclusion it follows that the appellant is entitled to a decree as prayed either for specific performance, or establishing a vendor's lien in his favor against the real estate conveyed by him to the appellee, enforceable upon the falling due of the indebtedness evidenced by the promissory note given as balance of purchase money. If mortgage be not executed, within sixty days from the filing of this opinion, then decree establishing such vendor's lien shall be entered by the district court in accordance with our holdings after reinstating the cross-petition in the files.

The cause is *Reversed* and *Remanded.*

WEAVER, C. J., and DEEMER and GAYNOR, JJ., concur.