W. A. MILLER, Appellee, v. ACME FEED INCORPORATED, Appellant.

No. 45113.

Aᴜɢᴜsᴛ 6, 1940.

Lehan T. Ryan, for appellant.

Thomas E. Mullin, for appellee.

Hᴀʟᴇ, J.—The plaintiff, who had been an agent for the defendant and also a dealer buying of defendant, brought this action to recover on a balance of account for commissions which he alleged were due him from the defendant. The defendant by way of answer claimed that the matter had been adjudicated in the state of Illinois adversely to the plaintiff, and that the court in Illinois had found that the plaintiff was indebted to the defendant in the sum of $250 and had entered judgment

for that amount. The defendant also alleged that it was not indebted to the plaintiff in any sum, and alleged that the plaintiff was indebted to it in the sum of $250 as adjudicated in the state of Illinois, and demanded judgment by way of counterclaim against the plaintiff in that amount. Jury was waived and the cause was tried to the court. After hearing the testimony the court found that the judgment in Illinois was obtained by fraudulent practices, and that it was not valid and not entitled to full faith and credit, and entered judgment in favor of the plaintiff for $660.84 and dismissed the counterclaim.

The defendant company is located in Forest Park, Illinois, and manufactures and sells a combination of proteins for hogs and cattle, to be used in connection with their feed to balance the ration. The custom is to sell to salesmen and dealers, either for cash or on credit. The contract of the company with Miller as salesman was in writing, but the wholesale or dealer's contract was oral. The company carried two accounts with Miller, one as a salesman's account, and the other as a merchant's, or wholesale, account. The wholesale account consisted of items of feed shipped and charged to him and which feed he would sell to the purchaser as any other merchant. This was charged directly to him. The salesman's account was made up of commissions which he received on all goods sold in his territory under his salesman's contract. It was the custom that if an order came in from his territory the salesman's account was immediately credited with the full commission from that order, but, if the order was not paid for by the customer, this commission, or portion that had been credited on that order, was charged back against the account.

According to the testimony of the president of the company, George A. Simpson, on June 17, 1937, the company owed Miller approximately $1,500 on the salesman's account, and Miller owed the company approximately $900 on the wholesale account, leaving a difference of $620.16 between the accounts. At a meeting on that date in Forest Park, a check was given Miller by Simpson for the sum of $620.16, the book

balance—in which, in event of failure to collect some of the accounts sold by Miller, there was a risk of loss. Miller then turned over to the company this Simpson check for $620.16, the company's claim being that this was in order to gain more credit. The defendant claims that it was agreed that the check was to be given Miller for the difference between the two accounts, $620.16, and that he was to turn it back to Simpson, and Simpson personally would take his chances. This was alleged to have been done in order to balance the two accounts so that thereafter Miller would owe the company nothing and the company would owe Miller nothing. Apparently, under the company's system of bookkeeping, the accounts were not balanced on the books, but were carried along in the same manner, and the books do not show that at any time the $900 item against Miller was ever canceled. It does not appear from the testimony that Miller obtained credit on the books for the $620.16 check, which was to be transferred to Miller's account, from the salesman's account to his wholesale account. From the evidence it appears that it was difficult to determine just what was the status of the Miller account. It was necessary, in order to arrive at the exact situation, that the books of the company be compared or supplemented with the Miller books.

Miller was invited by the president of the company to come to Forest Park for the alleged purpose of adjusting the accounts. In compliance with the request of the president, Miller, in company with one Bacon, whom he had selected to audit the accounts, went to Forest Park, to the office of the company, and in connection with Mrs. Hagan, the bookkeeper of the company, examined the books with a view to straightening out the difficulty in the accounts, and especially in regard to the $620.16 check. The testimony of Miller's auditor shows that the bookkeeper of the defendant company inquired during the morning what the audit revealed, and was informed that the company was indebted to Miller. The parties were engaged on the books until noon, and there was some talk that the matter must be adjusted by a lawsuit. The president of the company was not present but was represented by his son

and the bookkeeper. Before the accounts were finally adjusted, and while still engaged upon them, between 2 and 3 o'clock in the afternoon, notice of suit was served upon Miller before a justice of the peace in Forest Park. This ended all negotiations, and later a judgment was rendered by the justice against Miller in the sum of $250 and costs. After the judgment was rendered the defendant company forwarded a check for about $17, with the endorsement, ''Settlement of all accounts in full,'' which check was returned by the plaintiff to the company.

The defendant claims that the district court erred in failing to find that the judgment obtained in Illinois was entitled to full faith and credit; and in finding and ordering that the Illinois judgment against plaintiff was not a binding adjudication, because of fraud. Defendant argues that the judgment of a sister state is entitled to full faith and credit. This is true, with certain qualifications. If the jurisdiction of the foreign court is obtained by fraud, then, under our holdings, the judgment is void and the full faith and credit clause does not apply. The general rule is set out in 15 R. C. L., page 935, paragraph 411:

''So where, for the purpose of obtaining jurisdiction of the person, a resident of one state is induced by false representations to go to another state, where he is served with a summons, it has been held that the jurisdiction so acquired by the foreign tribunal is fraudulent, and the fraud constitutes a good defense to an action, brought in the first state, on the foreign judgment rendered by it. It seems that in such a case the defendant is not bound to appear in the action in which such judgment was rendered for the purpose of moving to dismiss the proceedings on the ground of the fraud, and that the defense of fraud in acquiring jurisdiction may be interposed when a legal demand is made for the first time on the judgment.'' Citing Dunlap v. Cody, 31 Iowa 260, 7 Am. Rep. 129, and note.

The question of fraud in the procurement of a foreign judgment arose on the facts in Toof v. Foley, 87 Iowa 8, 54 N. W.

59. The rule there laid down, on facts somewhat similar to the case at bar, was definitely stated, citing Dunlap v. Cody, supra, that if a person residing in one jurisdiction be induced under false pretenses or representations, to come into another, for the purpose of there getting service upon him, the jurisdiction thus acquired will be held to have been fraudulently obtained and the judgment is void. In the case cited the defendant was induced to file an answer, but notwithstanding such appearance and answer, the judgment was held not to be valid. The case of Crandall v. Trowbridge, 170 Iowa 155, 156, 150 N. W. 669, 670, Ann. Cas. 1916C, 608, cited by defendant, is based upon facts differing from the case at bar. But in that case the rule is clearly set out:

"If the presence of appellant in Iowa was procured by trickery, deceit, or the fraudulent and wrongful acts of plaintiffs, or those acting in their behalf, the court did not obtain jurisdiction, and in that case the motion to quash should have been sustained."

We think that under the rule above laid down there was no duty devolving upon plaintiff either to appear or defend in Illinois, if jurisdiction was in fact fraudulently obtained. See 15 R. C. L., page 935, above cited, and Dunlap v. Cody, supra. In the latter case it was suggested by judgment plaintiff that the remedy of the judgment defendant was to urge the invalidity of the judgment in the Illinois court, either by motion for dismissal by objection to the service, or by proceeding in equity to set the judgment aside or restrain its collection. The court held that there was no such duty. The case of Northwestern Cas. & Sur. Co. v. Conaway, 210 Iowa 126, 129, 230 N. W. 548, 549, 68 A. L. R. 1465, does not support defendant's theory of the duty of plaintiff to appear in the Illinois court. The case involved the question of immunity from service of process, and a motion to quash which invoked the jurisdiction of the court, and not the question of obtaining jurisdiction by fraud. The case states, citing authorities, that judgments erroneously entered in such cases are not void, but

voidable, the final holding being that ''the courts of this state cannot refuse to give full faith and credit to a judgment rendered in a sister state which is voidable only, and not void. So, in Mahoney v. State Insurance Co., 133 Iowa 570, 576, 110 N. W. 1041, 1043, 9 L. R. A., N. S., 490, it is stated:

''If the judgment be void for want of jurisdiction in the court pronouncing it, of either of the parties or of the subject-matter, it may, of course, be attacked at any time or in any proceedings whereby it is sought to be enforced; and as the same may be true as to any fraud which renders it void, and not simply voidable.''

See also Ashby v. Manley, 191 Iowa 113, 161 N. W. 869; Cohn, Baer & Berman v. Bromberg, 185 Iowa 298, 170 N. W. 478, citing Rogers v. Gwinn, 21 Iowa 58, and other cases. But we have here to do with a judgment which is not merely voidable, but, if the evidence sustains the pleaded facts, is void. No compulsion to defend exists in such a case.

█ As stated, trial was to the court, jury being waived. Hence, under the general rule, the finding and judgment of the court, based on substantial supporting testimony, has the force and effect of a jury verdict and will not be disturbed here. The court had before it all the evidence, including letters written plaintiff by defendant, requesting plaintiff to go to Forest Park, and an offer to pay carfare for plaintiff's auditor. These were in evidence. The court also had the opportunity to see and hear all witnesses and weigh their testimony. It could consider the judgment itself, and the attendant circumstances in connection with the bringing of the suit, with the fact that the parties were engaged, or apparently engaged, in an attempt to reconcile their conflicting claims when notice was served. No very satisfactory evidence was offered to show upon what the amount of the justice's judgment was based. From the record we think there was evidence to permit the court to determine as a fact that the trip was suggested and procured to be undertaken for the purpose of bringing plaintiff within

the jurisdiction of the Illinois justice court. The court could and did find from the evidence that the plaintiff was brought to Illinois, not for the purpose of adjustment of accounts, but to secure a judgment. With such a finding we are not disposed to disagree. See Toof v. Foley, supra.

Defendant's claim that the court erred in dismissing the counterclaim is determined by the finding as to the invalidity of the Illinois judgment. We must therefore conclude that the court's finding and order in this respect should stand.

The principal controversy in the case was as to the Illinois judgment, which if valid would necessarily have disposed of the case. Question is raised as to the amount of the judgment awarded plaintiff. An examination of the record and the computation made by the witnesses who audited the accounts persuades us that the amount determined by the court is correct.

For the reasons given, we hold that the cause should be, and it is, affirmed.—Affirmed.

RICHARDS, C. J., and STIGER, BLISS, OLIVER, HAMILTON, and MILLER, JJ., concur.