EDWARD WHITNEY & others *vs.* WILLIAM ESSON & others.

A usage of agents, in collecting drafts for absent parties, to surrender them to the drawees at maturity, and, upon mere confidence in the good credit of the drawees, to take in exchange their checks upon banks, is not a reasonable usage.

The buyer of goods sent to the seller the draft of one third person on another for their price, with a request to pass it to the buyer's credit; and the seller, after obtaining the acceptance of the drawee, replied that it should appear to the buyer's credit when paid. At its maturity the seller surrendered it to the drawee, taking in exchange his check upon a bank. The drawee failed before the check could be collected in the ordinary course of business; no notice of dishonor or protest of the draft was ever given to the drawer; and the seller presented the check as a claim against the drawee's estate in insolvency. *Held*, that the seller could not maintain an action against the buyer for the price of the goods.

CONTRACT by the firm of Sprague, Soule & Co., merchants at Boston, for the price, $2235.35, of an invoice of goods sold to the defendants, who were traders in Nova Scotia. Defence that the defendants had fully paid the plaintiffs for the goods.

At the trial in the superior court, before *Ames*, C. J., these facts appeared : The defendants, on March 14, 1866, sent a letter to the plaintiffs, inclosing a draft of Huse & Lowell, bankers at Halifax, on J. H. Clapp & Co., bankers at Boston, for the price of the invoice, with a request for the plaintiffs to pass it to the defendants' credit. The plaintiffs presented the draft for acceptance, and, upon its acceptance by the drawees, replied on March 17 to the defendants, acknowledging the receipt of it, and adding that it had " been accepted, and will appear to your credit when paid."

The hours of business at banks in Boston were from nine o'clock till two o'clock : and at quarter before two o'clock on the afternoon of Friday, March 30, which was the last day of grace on the draft, one of the plaintiffs called with it at the office of the drawees, where there were other customers at the time, the completion of whose business he was compelled to await until a few minutes past two o'clock, when he gave up the draft to them upon receiving their check on the Third National Bank of Boston for the amount of it. This check the plaintiffs deposited, the next morning, upon their account in the Massachu-

setts Bank; and on the morning of Monday, April 2, (but precisely at what hour did not appear,) it was returned to the plaintiffs through the Clearing House, unpaid. One of the plaintiffs then presented it at the Third National Bank about the middle of the forenoon, and was answered " No funds." He immediately called upon the drawees, and demanded a surrender of the draft but they refused to return it. The plaintiffs then telegraphed to the defendants in Nova Scotia: " Clapp failed. Draft was presented when due, and they gave check on bank, which bank declined paying. No funds."

At the close of bank hours on Friday, March 30, there was a balance of $6696 to the credit of the drawees on their account with the Third National Bank; and at the close of bank hours on Saturday, March 31, a balance of $3687.96. This was all paid out on Monday morning, when the drawees stopped payment at ten o'clock, after doing business as usual until that hour; and their failure became publicly known before eleven o'clock. Up to the time of their failure their credit was always good.

The deposition of a member of the defendants' firm was put in evidence, to the effect that no notice of dishonor or protest of the draft was ever received by them; and a similar deposition of a member of the firm of the drawers as to the nonreceipt by them also of any such notice.

" It was agreed that it is a usual and common practice for holders of drafts to accept the check of the drawee in exchange for the draft, though it was not claimed to be a general and established usage; and the same agreement was made as to the practice of merchants and bankers to deposit checks at the banks instead of personally presenting them for payment."

On these facts, the judge directed a verdict for the defend ants, and reported the case for the revision of this court.

*G. O. Shattuck & J. B. Thayer,* for the plaintiffs.

*A. A. Ranney,* for the defendants.

CHAPMAN, C. J. The defendants inclosed the draft of Huse & Lowell to the plaintiffs, with a request that they would pass it to the defendants' credit. The plaintiffs, in reply, acknowl-

edge its receipt, and say they will pass it to the defendants' credit when paid. As the defendants made no objection to their retaining it on these terms, they are not bound to pass it to the defendants' credit unless it has been paid, or unless they have so treated it as to have become responsible for it.

On the last day of grace they presented it for payment; and on receiving the check of Clapp & Co. for the amount, payable to their order at the Third National Bank, they gave up the draft to them to be cancelled. No notice of the nonpayment of the draft has been given to Huse & Lowell, and the defendants have thereby lost all claim upon them. The question is raised whether the receipt of this check by the plaintiffs was a payment of the draft. If it was not, the plaintiffs have given up the draft to the drawees without payment, and it has thereby been lost to the defendants unless the plaintiffs are liable for it. If it was paid, the payment has been received by the plaintiffs. It would be unreasonable to hold that it was no payment to the plaintiffs, and yet that they were justified in giving up the draft without payment by the acceptor or taking any steps to hold the drawer.

In *Russell* v. *Hankey*, 6 T. R. 12, it was held that a banker in London, to whom bills of exchange had been sent for collection by his correspondent in the country, was not guilty of negligence towards his correspondent in giving them up on receipt of checks drawn upon a banker in London, though the checks were dishonored for want of funds. The decision was based upon the ordinary usage in London. But in Byles on Bills, (5th Am. ed.) 24, it is said not to be usual at this day with London bankers to exchange bills for checks, and it is doubtful whether they would now be protected in so doing. In this case it is agreed by the parties that it is a common practice for holders of drafts to accept the check of the drawee in exchange for the draft, though it is not claimed to be a general established usage. It is undoubtedly true that men who keep bank accounts are accustomed to give checks for their debts, and in most cases their standing is such that these checks are taken by their neighbors as readily as cash. This may make a common practice among

men who are dealing on their own account, in respect to such dealings ; but such a practice falls short of a usage applying to the collection of drafts for absent parties. And it is not a reasonable usage that one who collects a draft for an absent party should be allowed to give it up to the drawee, and sacrifice the claim which the owner may have on prior parties, upon the mere receipt of a check which may turn out to be worthless.

By taking the check and giving up the draft, the plaintiffs made the check their own as between them and the defendants, and were bound to apply it to the payment of the debt now in suit, in conformity with their agreement.

*Judgment for the defendants on the verdict.*