STEPHEN FERNALD *vs.* WILLIAM M. BUSH & others.

Suffolk.    September 8. — December 7, 1881.

If the payee of a draft presents and surrenders it to the drawee, and receives during business hours the latter's check for the amount thereof, which is not presented to the bank on which it is drawn until the next day, and payment is then refused, the drawer of the draft is discharged from liability thereon.

A. sold to B. the note of a third person, and received therefor from B., after bank hours, his draft, payable at sight, on C., a banker, with whom B. had funds on deposit sufficient to pay it.  On the next day, within an hour after the opening of C.'s banking-house, A. presented the draft to C. and received the latter's check on a bank for the amount thereof, and within an hour afterwards deposited the check for collection to his credit in another bank in which he kept his account.  On the following day, the check was presented by the latter bank to the bank on which it was drawn and payment was refused, C. having failed and suspended payment on that day, before the check was presented; and the check was returned, through his bank, to A. about noon.  A. immediately filled out ready for signature a note for the amount of the draft, called on B., told him that the check which he received for the draft was not paid, but did not tell him that C. had failed, although he knew it, obtained B.'s signature to the note, and, after erasing his own indorsement on the check, delivered it to B.  B., at the time he signed the note, did not know of C.'s failure, or that the check was not presented for payment until the day after it was received, and supposed he received his draft from A. instead of the check  B. at once called on C. and learned these facts, and then tendered the check to A. and demanded the note, but A. refused to receive the one or give up the other.  *Held,* in an action on the note by A. against B., that a finding that B. gave the note voluntarily, and with full knowledge and under no mistake, was unwarranted.

GRAY, C. J.    The plaintiff brought an action of contract to recover the sum of $1078.14.  The defendants admitted his claim, and filed a declaration in set-off for $1189.84, containing two counts, alleged to be for the same cause of action ; the one for the price of a promissory note of E. A. Mudge & Co. for that sum, sold and delivered by the defendants to the plaintiff; and the other on a promissory note signed by the plaintiff, the material part of which was as follows : " Boston, December 15, 1876. $1189.84.    Borrowed and received of Bush, Wood, Pinkham & Co. eleven hundred eighty-nine $\frac{84}{100}$ dollars, which I promise to pay on demand, with interest."

At the trial in the Superior Court, without a jury, the following facts were undisputed : On December 13, 1876, the defendants sold to the plaintiff a note of E. A. Mudge & Co. for $1189.84, and received therefor from him after bank hours his

draft for that sum payable at sight on Bates & Albee, bankers, with whom he kept deposits of money subject to be drawn by check or draft at sight. On December 14, within an hour after the opening of the banking-house of Bates & Albee, the defendants presented the draft to them for payment, and at once received from them their check on the First National Bank of Boston for the amount thereof, and within an hour afterwards deposited this check for collection to their own credit in the National Bank of the Commonwealth, in which they were accustomed to keep their bank deposits and account. On December 15, the check was presented by the Bank of the Commonwealth to the First National Bank for payment, which was refused, and the check so dishonored was returned by the Bank of the Commonwealth to the defendants about noon. Bates & Albee had failed and suspended payment on that day, before the check was presented. Upon the return to the defendants of the dishonored check of Bates & Albee, the defendant Pinkham, after filling out ready for signature the note declared on in the second count in set-off, called on the plaintiff, obtained his signature to it, and, erasing the defendants' indorsement on the check, delivered the check to him.

As to what took place at this interview between Pinkham and the plaintiff their testimony was conflicting. Pinkham testified that he handed the check to the plaintiff face up, and said to him, " The check which we received for your draft was not paid; would like you to give me your borrowed and received for it." Pinkham also testified that at that time he knew, and did not tell the plaintiff, that Bates & Albee had failed. The plaintiff testified that Pinkham said to him. " Your draft was not paid, would like your borrowed and received for it;" that he signed the note supposing that he received his own draft in return; that he had had dealings with the defendants for several years, and supposed it was all right; that Pinkham handed him the check of Bates & Albee back up, and he put it in his pocket-book without examining it, and did not discover that it was not his own draft until he called upon Bates & Albee a few minutes afterward to inquire why the draft had not been paid. The plaintiff further testified, and it was conceded by the defendants, that from the time he gave the draft

to the defendants, on December 13, up to the time of the failure of Bates & Albee on December 15, his amount of money on deposit with Bates & Albee was much larger than the sum of all his drafts drawn against it; that neither the failure of Bates & Albee, nor the fact that their check was not presented for payment until December 15, was known to him until he called on Bates & Albee after his interview with Pinkham on that day; and that after seeing Bates & Albee he tendered the check to the defendants and demanded his own note, and they refused to receive the one or to give up the other. All these transactions took place, and all the parties had their usual places of business, in the city of Boston.

The court, at the request of the plaintiff, ruled "as matter of law, that, by the defendants' course of dealing with said draft and check, the plaintiff was discharged from liability to the defendants in respect thereof and the original consideration therefor, and that the defendants could not maintain their declaration in set-off, unless upon said borrowed and received as a new promise made under full knowledge of the facts and that the plaintiff had been so discharged."

The plaintiff further requested the court to rule " that there was no sufficient evidence in the case to support the defendants' declaration in set-off on said borrowed and received, or on any new promise, and that the defendants' declaration in set-off could not be maintained upon the evidence." But the court refused so to rule, and " found it to be a fact that as to the interview between Pinkham and the plaintiff it was as stated by Pinkham, and not as stated by the plaintiff, and that the plaintiff gave said borrowed and received voluntarily and with full knowledge and under no mistake," and found for the defendants in the sum of $186.20, being the excess of the amount due from the plaintiff to the defendants over the amount due from the defendants to the plaintiff including interest. To this refusal to rule as requested by the plaintiff, and to the findings of the court, the plaintiff alleged exceptions.

This court cannot indeed revise the decision of the court below on the comparative credibility of witnesses or other matter of fact. And the surrender of the check of Bates & Albee might be a sufficient legal consideration for the promissory note

made by the plaintiff to the defendants. *Wilton* v. *Eaton*, **127** Mass. 174. But the difficulty in this case lies deeper.

The draft drawn by the plaintiff on Bates & Albee, having been received by the defendants after business hours on December 13, was seasonably presented to the drawees on December 14; and if it had been dishonored on that day, the defendants might, by giving notice of the dishonor to the plaintiff on the next day, have held him liable upon the draft. But neither they nor their agent, the Bank of the Commonwealth, could by accepting from the drawees their check in lieu of money prolong the plaintiff's liability as drawer; and by holding that check, without presenting it for payment, until December 15, they discharged him from such liability. *Whitney* v. *Esson*, 99 Mass. 308. *Smith* v. *Miller*, 43 N. Y. 171.

On December 15, when the defendants obtained from the plaintiff his promissory note for the amount of the draft, the case (assuming the truth of Pinkham's testimony) shows that the defendants knew, and the plaintiff did not, of Bates & Albee's insolvency, and of the delay of the defendants in presenting the check for payment. In other words, the plaintiff, when he made the new promise, had not only no knowledge of the insolvency of Bates & Albee, but had no knowledge, and no reason to believe, that, instead of the draft having been dishonored on December 14, (in which case he would be liable to pay it,) the defendants, by receiving the check of Bates & Albee, and retaining it until December 15, had discharged him from liability on the draft.

The plaintiff therefore acted under a mistake as to a material fact; and the finding of the court below, that the plaintiff gave his promissory note voluntarily and with full knowledge and under no mistake, was unwarranted as matter of law, and for this reason his exceptions must be sustained. *Garland* v. *Salem Bank*, 9 Mass. 408. *Low* v. *Howard*, 11 Cush. 268. *Kelley* v. *Brown*, 5 Gray, 108.                    *New trial ordered.*

*B. F. Hayes*, for the plaintiff.

*A. Hemenway*, for the defendants.