## FIRST NATIONAL BANK OF SKOWHEGAN

### *vs.*

### SAMUEL A. MAXFIELD.

Somerset.    Opinion June 3, 1891.

*Bills. Protest. Payment. Assignment. National Bank. Mortgage.*
*R. S., c. 32, § 10.*

Waiver of demand and notice by the indorser of a foreign bill of exchange is invalid under R. S., c. 32, § 10, unless in writing and signed by him or his agent.

83  576
92  150

BANK *v.* MAXFIELD. 577

When commercial paper has been paid by the party whose debt it appears to be, it becomes commercially dead, but is evidence in the hands of the payor to charge the real debtor.

A foreign bill, presented for payment by the holder, a Boston bank, to the acceptors, on the last day of grace and surrendered to them, as paid, in exchange for their check, on another bank where they had funds, but who failed before the check was there presented on the next day, was thereby paid and became commercially dead.

Such bill thereafter remained evidence in the hands of the acceptors, who had so paid it, of "money paid" for the accommodation of the payee, shown to be merely a borrower of the acceptor's credit and not a holder for value.

The acceptor's claim for money so paid may well be assigned in equity to the bank, that originally cashed the bill, by a delivery of it, so as to be a good consideration for a mortgage to such bank to secure the debt from the payee, the real debtor.

The payee, by giving such mortgage, merely secured his own debt, and a representation to him, by the bank, as inducement to give the mortgage, that the bill was unpaid, though untrue, is harmless and not fraudulent.

A national bank, under the laws of the United States, may take and hold such mortgage.

ON REPORT.

The case is stated in the opinion.

*Merrill and Coffin,* for plaintiffs.

Counsel cited : *Marrett* v. *Brackett,* 60 Maine, 527 ; *Olcott* v. *Rathbone,* 5 Wend. 490 ; *Strang* v. *Hurst,* 61 Maine, 9 ; *Dana* v. *Third National Bank,* 13 Allen, 445 ; *Robbins* v. *Bacon,* 3 Maine, 346 ; *Adams* v. *Robinson,* 1 Pick. 462 ; *Bullard* v. *Randall,* 1 Gray, 605 ; *Gibson* v. *Cooke,* 20 Pick. 15 ; *Schuler* v. *Laclede Bank,* 27 Fed. Rep. 424 ; *Bradford* v. *Fox,* 38 N. Y. 289 ; *Kelty* v. *Second National Bank of Erie,* 52 Barb. 328 ; R. S., of U. S. § 5136, Art. 7 ; *Reynolds* v. *Crawfordsville National Bank,* 112 U. S. 405 ; *Bank* v. *Matthews,* 98 U. S. 628 ; *Bank* v. *Whitney,* 103 U. S. 99 ; *Swope* v. *Leffingwell,* 105 U. S. 3 ; *Silver Lake* v. *North,* 4 Johns. Ch. 370.

*Walton and Walton, Barker, Vose and Barker,* with them, for defendant.

Counsel cited : *Whitney* v. *Esson,* 99 Mass. 308 ; *Fernald* v. *Bush,* 131 Mass. 591 ; *Warden* v. *Tucker,* 7 Mass. 449 ; *Phœnix Bank* v. *Hussey,* 12 Pick. 483 ; *Ocean Nat. Bank* v.

Williams, 102 Mass. 143; Ticonic Bank v. Stackpole, 41 Maine, 304; Green v. Jackson, 15 Maine, 136; Freeman's Bank v. Perkins, 18 Ib. 292; Mechanics Bank v. Merchants Bank, 6 Met. 13; Fabens v. Mercantile Bank, 23 Pick. 330; Mer. Nat. Bank v. Samuel, 20 Fed. Rep. 664.

HASKELL, J. The controversy is between two creditors of the same debtor striving to collect their respective debts out of property insufficient to pay both, the plaintiff under a mortgage, and the defendant under an assignment growing out of an attachment made subsequent to the mortgage; so, the question is, whether the plaintiff's mortgage is valid.

It is admitted by the record and by briefs of counsel that the title to certain wool covered by the mortgage was in one Tinkham, the mortgagor, at the time the mortgage was given; and the case must be considered in the light of this admission that the parties have solemnly made, regardless of considerations that might arise from the record without it.

August 2, 1889, Tinkham, the owner of the wool, received from one Buckley, the agent of Brown, Steese & Clark, wool merchants in Boston, a sight draft upon them for $4000 drawn by Buckley, payable to Tinkham's order, to put him in funds for the purchase of wool that should ultimately become the property of that firm. The draft, therefore, was a loan of credit by Brown & Co. to Tinkham, a pure accommodation, for, it is admitted that the wool he purchased with the funds became his own.

August 2, the same day, Tinkham discounted the draft at plaintiff bank, which sent it for collection to its correspondent, the National Exchange Bank in Boston. On the next day, that bank presented the draft to Brown & Co., and they accepted it, so that it fell due on the last day of grace, August 6. That day, Brown & Co., the acceptors, took the draft from the bank and gave in exchange their check on the National Bank of Redemption in Boston, where they had funds. The draft was stamped by the bank "paid," before it was delivered to the acceptors, as customary in such cases. The

Exchange Bank retained the check until the next day, August 7, when, on presentment, payment of it was refused, meantime, Brown & Co., the makers, having failed; thereupon, the Exchange Bank regained from Brown & Co. the draft, agreeing that, on three days notice, it would either return the draft or the check as it might elect to do. No such notice appears to have been given, nor does either the draft or check appear to have been returned.

August 8, the next day after the Exchange Bank regained the draft, the plaintiff bank received it by mail with a letter of advice, saying that it was unpaid and returned without protest, trusting "that you can arrange the matter without loss to us." Thereupon, plaintiff's cashier, who says he did not notice the stamp of "paid" on the draft, the impression being indistinct, informed Tinkham that the draft had not been paid, and he, supposing that to be the truth, on the 14th gave his note for $4000 to the plaintiff bank and a mortgage on the wool to secure the same. Afterwards, the defendant sued Brown & Co. and trusteed Tinkham as their debtor, who transferred and delivered the wool to the defendant, he having full knowledge of plaintiff's mortgage then duly recorded. The plaintiff sues, for the defendant's trover of the wool.

The draft was a foreign bill of exchange, being drawn in one state and made payable in another. Tinkham appeared to be an indorser, whose liability was contingent, to become fixed by protest only. It is provided by R. S., c. 32, § 10, "No waiver of demand and notice by an indorser of a promissory note or bill of exchange is valid, unless it is in writing and signed by him or his lawful agent."

When commercial paper is paid by the party whose debt it appears to be, it becomes *functus officio*, commercially dead, and no longer retains the character that it originally had. It is then but evidence of the transactions of its commercial life ; and the party seeming to be the promisor, who has paid it, may use it as evidence, in connection with other proof, to compel the real debtor to pay it. So, in this case, if Brown & Co. paid the draft, it ceased to be commercial paper, and became evidence in

their hands to hold Tinkham for the amount of it, actually but a loan to him.

It is urged that the draft was not paid by Brown & Co., the acceptors; but, that contention cannot prevail. When it matured, the holder, the bank, acting as correspondent for the plaintiff, upon receipt of the acceptors' check for the amount of it, stamped it "paid" and delivered it to them. The Exchange Bank took the check as payment, as money, instead of money. The draft was surrendered and not protested. It could not truthfully have been protested, for it had been paid. It is no good answer, that the Exchange Bank used reasonable diligence in that it complied with an established usage in such cases; for, should such usage obtain in Boston, it has been there adjudged not to be a reasonable usage "that one, who collects a draft for an absent party, should be allowed to give it up to the drawee, and sacrifice the claim which the owner may have on prior parties, upon the mere receipt of a check, which may turn out to be worthless." *Whitney* v. *Esson*, 99 Mass. 308; *Fernald* v. *Bush*, 131 Mass. 591.

The case of *Marrett* v. *Brackett*, 60 Maine. 524, is not in point; for there, the plaintiff received in payment of his note, that he did not surrender, the check of a friend of the maker, who had furnished the friend with funds for the purpose. The friend failed before the check, according to the custom of merchants, had been presented for payment; and it was held to be no payment of the note. The plaintiff was the holder of the note. He received from the defendant the check of a third party, did not surrender the note, used customary diligence in collecting the check, and, without his fault, it turned out worthless, and might well be held no payment.

The doctrines applied in the case at bar are in accord with the law as stated in *Sandy River National Bank* v. *Miller*, 82 Maine, 137. The rules of mercantile law are arbitrary. Business could not be safely done unless they were. The draft in question, in the eye of the law, was paid at maturity, and became dead to the commercial world.

When, therefore, the draft had been paid by the acceptors,

Tinkham's liability on it as indorser ceased, and they alone had a claim against him for money paid to his use, in satisfaction of their accommodation loan of credit to him. He was their debtor; not as indorser of the draft, for he could not so be. The draft shows that they paid their own debt; but the truth is, they paid his debt, and he became their debtor for doing so.

Now Tinkham became the debtor of Brown & Co., for the wool is admitted to be his, and he could not both own the wool and not owe for the money borrowed to purchase it with. The draft is evidence of the amount of the debt; and as Brown and Co. had become liable to the bank on their check for the amount of it, it was competent for them to assign their debt against Tinkham to the bank as security for their unpaid check. This, in equity, they did by the redelivery of the draft, and the bank transferred the same equity to the plaintiff, that it might collect the debt from Tinkham, the original debtor, who, in giving the note and mortgage to the plaintiff bank, merely paid his own debt. He took up the draft, and his liability as debtor in the premises became extinguished. No one can ever collect the debt of him again. He paid his debt and received the only evidence that, in the hands of another, could make him a debtor in the premises. *White* v. *Kilgore*, 77 Maine, 571.

But, the defendant says that he was induced to give the mortgage by deceit, in that he was told the draft was unpaid. Suppose he was. If the draft was unpaid and had not been his own debt he was relieved from liability upon it for want of protest, and he is presumed to have known the law. If it was his own debt, then he was liable to pay it to some one, and it could make no difference to him whether he paid it to Brown and Co. or to their equitable assignees. He paid it to the latter; and the deceit set up is immaterial. It worked no injury to Tinkham, for he did no more than he was legally bound to do. He voluntarily transferred property to the plaintiff, of which he was the absolute owner, to secure his own debt, as he might lawfully do; and he could not effectually convey the same property, afterwards, to the defendant.

That the bank was authorized, under the laws of the United States, to take and hold its mortgage is too well settled to require further consideration.

For the rule of damages, see *Warren* v. *Kelley*, 80 Maine, 512.

> *Judgment for plaintiff for $4000, and interest from August 6, 1889.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and WHITEHOUSE, JJ., concurred.