EUGENE H. MAHONEY, Appellee, v. THE STATE INSURANCE COMPANY, Appellant.

**Foreign judgments:** LIMITATION OF ACTIONS UPON. There is no
1  statute of Nebraska limiting the time within which an action may be brought on a judgment of that State, and consequently an action may be brought in this State on a Nebraska judgment at any time within twenty years from its rendition.

**Vacation of judgments:** FRAUD. The fraud which will justify the
2  setting aside of a judgment must be something extrinsic and collateral to the question examined and determined in the action.

**Same:** COLLATERAL ATTACK. A judgment cannot be collaterally at-
3  tacked for fraud unless the fraud is such as to render the judgment absolutely void.

**Same:** LACHES. An action to set aside a judgment on the ground
4  of fraud must be commenced within a reasonable time after the fraud is discovered.

**Same.** Ordinarily the parties to an action cannot impeach a judgment rendered therein, in a collateral proceeding, on the ground that it was obtained through fraud or collusion.

**Foreign judgments:** EFFECT IN IOWA. The judgment of a foreign court will be given the same effect here that it has under the law of the State where rendered.

**Vacation of judgment:** FRAUD. The production of false evidence, or any other form of fraud, against which the injured party might have protected himself at the trial, is not a defense to an action on a foreign judgment brought in the courts of this State.

**Same.** In a suit on an insurance policy by a mortgagee to whom the same was payable in case of loss, the wrongful erasure of the name of an assignee of the mortgage from an assignment thereof and of the name of an endorser of the note, to which no objection was made at the time the instruments were offered in proof of the mortgagee's right to sue on the policy, is not such a fraud as will invalidate the judgment of a Nebraska court; and is not available as a defense to an action on the judgment in this State.

**Insurable interest:** RECOVERY BY MORTGAGEE. A mortgagee has a insurable interest in and may recover on an insurance policy issued to the mortgagor, either upon an assignment of the proceeds in case of loss; or where it has guaranteed payment of the note secured thereby in the hands of the assignee; or has paid interest thereon for the benefit of the mortgagor; or there is a stipulation in the mortgage that the mortgagor shall keep the property insured for the benefit of the mortgagee or his assignee.

**Evidence:** DECLARATIONS OF ATTORNEY. The declarations of an attorney made in mere conversations though to matters in issue in the case are not competent evidence against his client.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

SATURDAY, MARCH 9, 1907.

THIS is an action upon a judgment rendered in the district court of Seward county, Neb. Defendant pleaded many defenses which will be noticed in the body of the opinion. Judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Carr, Hewitt, Parker & Wright,* for appellant.

*Dudley & Coffin,* for appellee.

DEEMER, J.— The New Hampshire Trust Company recovered judgment against defendant in the district court of Seward county, Neb., upon a policy of fire insurance in the sum of $2,000, with interest. This judgment was appealed to the Supreme Court of that State, where it was affirmed on the 4th day of February, 1896. The judgment was rendered in the name of the New Hampshire Trust Company under an allegation of the original petition that it was the legal owner and holder of a mortgage upon the property insured. The policy was issued to one Brown, who was the owner of the property, and it provided that "loss if any is payable to the New Hampshire Trust Company, mortgagee, as their interest may appear at the time of loss." After the judgment was rendered, and on or about the 4th day of October, 1899, the New Hampshire Trust Company assigned the judgment to the plaintiff herein. It is claimed that when the original action was brought, and at all times since, plaintiff herein was in fact the owner of the note and mortgage; that the New Hampshire Trust Company had no interest in the note and mortgage; that it had assigned the same to plaintiff; and that the judgment was obtained through fraud and false swearing. The testimony shows that on or about March, 1889, the New Hampshire Trust Company assigned the note and mortgage held by it to plaintiff herein, and as part consideration therefor guarantied the payment of the note by the following instrument: "For value received, the New Hampshire Trust Company hereby guaranties the payment of the interest coupon hereto attached when due and the principal sum within two years after maturity with interest semiannually thereafter at six per cent., but the said company reserves the right to purchase the obligation at any time by paying the holder the face of

said note and interest to date of payment.    In case the holder
shall elect to retain this note after a tender of payment, said
company shall be released from all further liability herein."
Upon the back of the mortgage appeared the following as-
signment:    "For value received, I, Hiram D. Upton, the
mortgagee named in the within mortgage, it being the same
mortgage recorded in the office of the county clerk in and
for the county of Seward, Nebraska, in Book 33 of Mort-
gages, on page 541, do hereby sell, transfer and assign to
Eugene H. Mahoney all my right, title and interest in and
to said mortgage and the debt thereby secured.    Witness my
hand and seal this 16th day of May, A. D. 1888.    [Signed]
Hiram D. Upton.    [Duly acknowledged.] "

The name of the assignee was originally in blank, but
plaintiff's name was inserted therein on March 21, 1889.
The loss occurred January 10, 1891, and the action upon
which the judgment was rendered was commenced in May
of the year 1891; the allegation in the petition being that
plaintiff, the New Hampshire Trust Company, was the
owner and legal holder of the note and mortgage.    The de-
fendant in its answer denied generally plaintiff's ownership
of the note and mortgage.    It seems that the action was
brought by an agent and attorney of the New Hampshire
Trust Company upon instruction from his principal.    Ma-
honey never had the policy in his possession, but at the
request of the trust company he redelivered the note and
mortgage to an agent thereof " to be used in court in the
insurance suit."    He did not know in whose name the suit
had been brought, but thereafter was informed of the situa-
tion when demand was made upon him to pay the cost of
printing a brief for use in the Supreme Court of Nebraska.
Before the note and mortgage reached the attorney in Ne-
braska, an indorsement without recourse of the signature of
one H. D. Upton, who it appears was treasurer of the trust
company, was erased, as also was the name of plaintiff, from
the assignment on the back of the mortgage.    These era-

sures were not expressly authorized by plaintiff herein, and, when the instruments were returned to him after the Nebraska judgment was obtained, they were in the same condition as when redelivered to the trust company; that is to say, they bore the name of Upton as indorser, and also the name of plaintiff herein as assignee of the mortgage. There is no showing as to who made the erasures and interlineations.

The trust company paid plaintiff herein the interest coupons as they matured, from April 1, 1889, to April 1, 1893, and for three of the years only were they reimbursed by the maker of the notes and mortgage. No portion of the principal of the loan, or of any other interest coupons, has been paid. This action was commenced April 8, 1902, and judgment was rendered in the district court of Polk county, October 24, 1905. For a reversal of this judgment appellant relies ·upon two propositions: First, that the action upon the foreign judgment is barred by the statute of limitations; and, second, that the judgment was procured by fraud and false swearing.

I. As to the first proposition: The action is not barred by the statute of this State. If there be a bar, it must be by the statutes of Nebraska, where the original judg-

1. FOREIGN JUDG-   ment was obtained. By section 482 of Cob-
MENTS: limi-   bey's Annotated Statutes of 1903 of the latter
tation of
action upon.   State, a judgment becomes dormant, if execution be not sued out within five years, or if there be an interval of five years between the suing out of executions, and it ceases to operate as a lien upon the estate of the judgment debtor. The general statutes of limitations of that State do not specifically refer to judgments, but they do provide that an action for relief not hereinbefore provided can only be brought within four years after the cause of action shall have accrued. The Supreme Court of that State has held that this latter provision does not apply to domestic judgments. *Snell v. Rue* (Neb.), 101 N. W. 10.

By section 1463 (Cobbey's Ann. St. 1903) of the statutes of our sister State, it is provided that dormant judgments may be revived in the same manner as is provided for reviving actions before judgment, and the courts of that State have held that a dormant judgment has validity and may be revived or action brought thereon as of debt. *Wright v. Sweet,* 10 Neb. 190 (4 N. W. 1043); *Furer v. Holmes* (Neb.), 102 N. W. 764; *Gillespie v. Switzer,* 43 Neb. 772 (62 N. W. 228). Testimony was also given by witnesses qualified to speak to the effect that there was no statute in Nebraska limiting the time within which actions may be brought upon domestic judgments. Indeed, the question now before us was practically settled in *David v. Porter,* 51 Iowa, 254, wherein it was held that action might be brought upon a Nebraska judgment which was dormant. See, also, *Meek v. Meek,* 45 Iowa, 294. Action upon the judgment is not barred by the statutes of Nebraska, and manifestly not barred by the statutes of this State, which permit actions thereon within twenty years from date.

II.  We come now to the more serious and only debatable question in the case. Was the judgment obtained by fraud? And, if so, was it such fraud as may be pleaded in

2. VACATION OF JUDGMENTS: fraud.

defense to an action on that judgment? We have recently had occasion to consider the question as to whether or not false swearing or perjury is such a fraud as will justify the setting aside of a judgment, and, after fully reviewing the authorities and unraveling the apparent confusion in our own cases, came to the conclusion that it was not such a fraud as to justify the setting aside of a judgment obtained thereby. See *Graves v. Graves,* 132 Iowa, 199. In view of the discussion to be found in that case, nothing further need be said upon that proposition. The fraud which will justify the setting aside of a judgment must be something extrinsic and collateral to the question examined and determined in the action. As said in *Pico v. Cohn,* 91 Cal. 129 (25 Pac. 970,

27 Pac. 537, 13 L. R. A. 336, 25 Am. St. Rep. 159): "A decree will not be vacated merely because it was obtained by forged documents or perjured testimony." See, also, *Hilton v. Guyot*, 159 U. S. 113 (16 Sup. Ct. 139, 40 L. Ed. 95); *Cromwell v. Sac County*, 94 U. S. 351 (24 L. Ed. 195). This seems to be the rule in Nebraska, although not so strictly applied as in some other jurisdictions. See *Secord v. Powers*, 61 Neb. 615 (85 N. W. 846, 87 Am. St. Rep. 474). But in that State the district court rendering the judgment may vacate and modify the same for fraud practiced by the successful party, provided application be made within two years after the judgment is rendered. See sections 602 and 609 of the Code of Civil Procedure of that State.

The defendant learned of the alleged fraud in the procurement of the judgment in May of the year 1896, and the judgment was affirmed on appeal in the Supreme Court of Nebraska February 4, 1896. Defendant took

3. SAME: collateral attack.

no steps to set aside that judgment for the alleged fraud, but waited until sued in the courts of this State to set it up as a defense to the judgment. If the judgment be void for want of jurisdiction in the court pronouncing it, of either of the parties or of the subject-matter, it may, of course, be attacked at any time or in any proceedings whereby it is sought to be enforced: and as the same may be true as to any fraud which renders it void, and not simply voidable. We shall assume that the law of Nebraska upon this proposition is similar to our own, as we have no evidence to the contrary. Now, it is well settled by the authorities everywhere that a judgment cannot be collaterally attacked, for fraud, unless that fraud be such as to render the judgment absolutely void. *Mason v. Messinger*, 17 Iowa, 261; *Edmundson v. Ind. District*, 98 Iowa, 639; *Bacon v. Chase*, 83 Iowa, 521; *Phelan v. Johnson*, 80 Iowa, 727.

And it is equally well settled that an attack upon a judg-

ment upon the ground of fraud must be made within a rea-
sonable time after the discovery of the fraud.
4. SAME.
Edmundson v. District, *supra.*

It is also generally held that parties to an action cannot
impeach or set at naught a judgment in a collateral proceed-
ing, upon the ground that it was obtained
5. SAME.
through fraud or collusion. Freeman on
Judgments, section 334, and cases cited, among which is
*Smith v. Smith,* 22 Iowa, 516.

Now, it might very well be claimed that, because of
defendant's laches in attacking the judgment in the courts
of Nebraska, after discovering the alleged fraud, the judg-.
ment became effective and invulnerable to at-
6. FOREIGN JUDG-
MENTS: effect tack by reason of the full faith and credit
in Iowa.
provisions of the Constitution.   If unimpeach-
able in Nebraska by reason of laches, it is unimpeachable
here.   It is fundamental that, with respect to a judgment of
another State after jurisdictional inquiries have been satis-
factorily answered, the question is:   What is its effect in
the State whence it is taken?   This is answered by saying
that it must have the same effect in another State that it
has at home; and, if valid under the laws of its creation, it
must be treated as valid in States under whose laws it would
as a domestic judgment be invalid.   Freeman on Judgments,
section 575, and cases cited.   That the district court 'of
Nebraska, as well as the Supreme Court of that State, had
jurisdiction both of the parties and the subject-matter, cannot
be gainsaid, and, aside from the question as to whether or
not the Nebraska judgment became unimpeachable because of
defendant's laches, we have the further question:   Was there
such fraud in procuring the judgment as to render it void?

Generally speaking, the fraud which renders a judg-
ment void, as distinguished from voidable, goes to the method
7. VACATION OF
JUDGMENTS: of acquiring jurisdiction, as in *Wonderly v.*
fraud.      *Lafayette Co.,* 150 Mo. 635 (51 S. W. 745, 45
L. R. A. 386, 73 Am. St. Rep. 474), and *Dunlap v. Cody,*

31 Iowa, 260; or to the fraudulent creation of a cause of action, as in *Klaes v. Klaes,* 103 Iowa, 692, and *Ocean Ins. Co. v. Fields,* 2 Story, 59 (Fed. Cas. No. 10,406). As a rule these matters are equivalent to jurisdictional questions, and courts have generally so treated them. Where, however, the fraud in the trial of the case consists in the production of evidence which is claimed to have been false, or any other form of fraud against which the injured party might have protected himself at the trial, it is not sufficient, according to the prevailing view in this country, to constitute a defense. See *Hilton v. Guyot, supra,* and cases hitherto cited. A somewhat different rule seems to prevail in England. See *Abouloff v. Oppenheimer,* L. R. 10 Q. B. 295. We have adopted the prevailing American doctrine in the Graves case, *supra.*

Now, what is the alleged fraud in this case? It consists in the erasure by some one of the name of plaintiff in the assignment of the mortgage, and of the erasure of the name

**8. SAME.** of H. D. Upton from an indorsement without recourse on the back of the note, which was made payable to his order. The papers bearing these erasures have been certified for our inspection, and they very clearly show on their face that erasures had been made. The most that can be claimed for the matter is that the papers were altered, and were in a sense forgeries. These papers were introduced in evidence upon the trial in the Nebraska district court, and they stood as witnesses to the right of plaintiff in that action to recover. If they spoke falsely, it was the duty of defendant's counsel to discover and expose the fact, as the means of knowledge were at hand, or at least sufficient was disclosed to put them upon inquiry. Before counsel was evidence that there were erasures upon these papers, and yet he or they did nothing to elucidate the truth. One of the issues in that case was the right of the plaintiff therein to recover as mortgagee or party in interest holding a note and mortgage upon the property, and it was

defendant's duty to be ready to meet the case made by plaintiff in that action. The case is no different from one where a living witness gives false testimony, and perjury, according to our rules, is no ground for vacating a judgment. Our holding is in accord with the great weight of authority, and under it defendant has not made out such a case of fraud as to defeat the judgment. See, as further sustaining our conclusions, *Cottle v. Cole,* 20 Iowa, 481; *Board of Commrs. v. Platt,* 79 Fed. 567 (25 C. C. A. 87); *Wolfinger v. Betz,* 66 Iowa, 594; *Crockett v. Crockett,* 132 Iowa, 388; *Loughren v. Bonniwell,* 125 Iowa, 518.

III. Aside from these considerations, however, it is doubtful if any fraud was perpetrated upon the defendant in the trial of the case in Nebraska. Something more than intent is necessary to constitute a fraud which courts will recognize. The policy of insurance provided that "loss if any is payable to the New Hampshire Trust Company, mortgagee, as their interest may appear at time of loss." At the time of the issuance of the policy, the New Hampshire Trust Company had an insurable interest, and by reason of its guaranty of the payment of the note which was secured by the mortgage, which mortgage was also assigned, it had an insurable interest at the time of loss. *Springfield Co. v. Allen,* 43 N. Y. 389 (3 Am. Rep. 711); *Hanover v. Bohn,* 48 Neb. 743 (67 N. W. 744, 58 Am. St. Rep. 719); *Gordon v. Mass. Co.,* 2 Pick. (Mass.) 249; *Schaeffer v. Anchor Mutual Co.,* 113 Iowa, 652; *Warren v. Company,* 31 Iowa, 464. So that, had the true facts been disclosed, it would not have been a defense, which defendant could have pleaded or successfully relied upon. At most, there would simply have been a variance between the allegations and the proof, which would not have been regarded as material, unless defendant was misled thereby. And, even if such a suggestion had been made, plaintiff in the original action might have amended its petition to conform to the testimony, and then recovered notwith-

*9. Insurable interest: recovery by mortgagee.*

standing the defense of failure of proof of interest, as alleged. The assured appointed the trust company to receive the amount promised by the policy in case of loss, and, as it had an insurable interest at all times, it could recover upon the policy in virtue of this appointment. *Jones v. Haines,* 117 Iowa, 77. The question as to the amount of its interest was necessarily involved in the Nebraska suit, and the actual ownership of the mortgage was not determinative of the case. The real question, had it ever been presented, the trust company being named as appointee and described as mortgagee, was: Did it have such an insurable interest at the time of loss that as such appointee it could recover? The entire mortgage debt was due when the loss occurred by reason of stipulations in the instruments creating it, and the trust company was liable on its guaranty for the full amount.

Moreover, it had advanced money to take up interest coupons for the benefit of the mortgagor, and there was a stipulation that the mortgagor should keep the mortgaged premises insured for the benefit of the mortgagee or his assignee. Under such circumstances, a lien might be impressed upon the proceeds of the policy in favor of the mortgagee. *Fred Miller Co. v. Capital Ins. Co.,* 111 Iowa, 590. 4 Cooley's Ins. Briefs, 3703, and cases cited.

Plaintiff Mahoney, who was assignee of the note and mortgage, is not complaining of the conduct of the trust company. On the contrary, he has adopted its acts, and is now seeking to enforce the judgment. The result of the whole matter is that no fraud was in fact perpetrated. Defendant was not deprived of any legitimate defense, and, had it known all the facts, it could not have defeated recovery upon the policy on these grounds. Doubtless, whoever made the erasures thought that plaintiff herein, Mahoney, could not recover upon the policy, as an indorsee or assignee, and that the erasures would simplify the case. He may, perhaps, have intended to defraud, but fraud, as we have said, does not consist in mere intention. There must be something done

which causes another injury.   *Skowhegan v. Mansfield,* 83
Me. 576 (22 Atl. 479) ; *Kimmans v. Chandler,* 13 Iowa, 327.

But appellant says that the promise in the policy to
pay indemnity to the trust company was personal, and could
not be assigned or transferred, citing *Kase v. Hartford Ins.
Co.,* 58 N. J. Law, 34 (32 Alt. 1057).   Let this be con-
ceded for the purpose of the case, still it in no manner solves
the question as to whether or not the trust company might
recover upon the policy.   It undoubtedly had a right of ac-
tion as an appointee, provided it held an insurable interest
in the property at the time of loss.   That it had such interest
is demonstrated by the authorities already cited.   Defend-
ant's only defense to an action brought by the trust com-
pany was that the trust company did not have an insurable
interest.   The trust company was undoubtedly an appointee,
and, if it retained an insurable interest, it had a right to sue.
According to defendant's counsel, the assignee of the note
and mortgage, plaintiff herein, could not have sued, and it is
contended that the owner of the property could not have
brought action in his own name.   Hence it is not a question
as to who was the real party in interest.   We think there
was no such fraud in the case as to constitute a defense to
the judgment.

IV.   Some testimony was received as to declarations
made by defendant's attorney in Nebraska after the case had
been tried in the courts of that State, to the effect that he
knew the trust company was not the owner
of the mortgage when the case was tried, and
did not interpose that defense, for the reason
that he did not believe it good.   This testimony should
not have been received.   *Tredway v. Railway Co.,* 40 Iowa,
526.   However, the reception of this testimony was without
prejudice.   The case was tried to the court without a jury,
and under the conceded facts the judgment was correct.
This case is ruled by the principles announced in Graves v.
Graves, *supra,* decided since the submission to the court be-

10. EVIDENCE:
declarations of
attorney.

low, and we might very well plant the decision upon the propositions decided in that opinion. As several other grounds for sustaining the judgment are argued, and seem to be good, we have considered them all, as they present interesting questions upon which it seems to be desirable to have an opinion.

The judgment is right, and it is *affirmed*.