JAMES T. MOUNT, PLAINTIFF, v. JOSHUA D. LOIZEAUX ET AL., DEFENDANTS.

Argued June 3 and 4, 1914—Decided December 9, 1914.

1. Where it appeared that the defendant Loizeaux had made an investigation of timber land in Newfoundland, Canada, with the assistance of guides and experts, from which he reached an estimate of value of the lands and timber and water rights which he thereafter communicated to the plaintiff, who acting

upon his own initiative, and upon the invitation of the defendant, sent his son, an expert in forestry, to investigate conditions for him, who made his report, and thereafter as a result of that investigation and his own inquiries the plaintiff purchased stock of the company owning the land—*Held*, in an action for deceit, the undisputed testimony concerning the plaintiff's independent inquiry and investigation, made it manifest that the purchase was made upon the strength of his own investigation, and not as a result of the plaintiff's representations.

2. Where a vendor does nothing to hinder or obstruct an independent investigation by a proposed vendee, but invites, assists and encourages it, and such an investigation is made by the vendee, who thereafter purchases, statements of the vendor regarding the extent and value of the *locus in quo*, made before the investigation, will be regarded as mere matters of opinion, and will not present the basis for an action for deceit.

On rule to show cause to the Essex Circuit.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and MINTURN.

For the plaintiff, *Jerome D. Gedney*.

For the defendants, *William R. Codington* and *Frederick J. Faulks*.

The opinion of the court was delivered by

MINTURN, J. The complaint alleges a case of deceit, based upon the sale of stock of the Gander River Lumber and Pulp Company, Limited, by the defendants to the plaintiff.

The deceit alleged consisted in representations as to the quantity of timber upon a tract of land in Newfoundland, Canada, and its value, as well as incidental representations regarding the Gander company. The gravamen of the action was that relying upon the representations, the plaintiff paid defendants $25,000 for the stock, and that the representations were known to be false to the defendants when made. The answer was substantially a general denial and an averment of belief in the value of the stock, and the land and lumber at the time of the sale of the stock, and that plaintiff had not

acted upon the defendants' representations. The trial resulted in a verdict for $28,399.17 against defendants, representing the purchase price of the stock and interest thereon.

The basis for the action consists not only in the falsity of the representations, but also in the fact that their falsity was known to defendants when they were made. *Cowley* v. *Smyth*, 46 N. J. L. 380.

The case was tried upon that theory, which, indeed, was the main issue presented by the pleadings. If the controversy could be rested alone upon the issue of fact thus presented, its solution by the jury, in view of testimony for and against the proposition of *scienter* might stand without disturbance. But the answer and proofs presented another and more vital issue which must determine the liability of the defendants; and to comprehend that issue, some conception of the material facts in the case becomes necessary.

The defendants were officers of the J. D. Loizeaux Lumber Company, which for some time anterior to the transaction under consideration, had been engaged in the lumber trade in Plainfield, in this state. The development of its business brought its officers into contact with men familiar with the lumber regions of Canada. It came to their knowledge that a large tract of lumber land in Newfoundland could be procured from a Mr. Crofut, a lumberman of that region, who held an option on it. Crofut represented to defendants that the *locus in quo* contained three hundred square miles of good timber land, near the Gander river, about thirty miles from Glenwood; that he held a government license to cut and saw timber for ninety-nine years, as well as a right to locate a saw mill site. It was made to appear to the defendants that the land was capable of exploitation for water power purposes, as well as for the production of pulp and manufacturing paper. The defendants undertook an investigation of the proposition, with the view of taking the property over as an asset of the Loizeaux company. The defendant Loizeaux went to Newfoundland with Crofut, who was familiar with the territory. He investigated to some extent the situation by personal observation, as far as he could conveniently traverse the

tract, in its primeval condition, and also by conversations with guides, trappers and lumbermen, who inhabited the region, and who substantially verified the representations of Crofut, the guides particularly making glowing representations of the tract, as a most desirable lumber and pulp proposition.

The result was that Loizeaux purchased the rights of Crofut for $67,200 and other rights incidental thereto, for the purpose of properly exploiting the property. Subsequently, the defendants purchased from one Taylor, of New Brunswick, Canada, an adjoining tract of about one hundred and fifty square miles for $20,000, and this, with the three-hundred-mile tract already acquired, and with three hundred additional acres of water power land thereafter purchased, the defendants were assured was equal in timber productivity to the site already procured from Crofut. Shortly thereafter the Gander company was incorporated, and commenced to operate upon the property for the building of a saw mill, and expended about $11,000 to that end. About this time the chief forester of Newfoundland furnished the defendant Dunn with a certificate verifying Taylor's estimate of the character of the tract sold by him to the defendants. About December 29th, 1910, the plaintiff met the defendant Loizeaux in connection with a loan which the Loizeaux company was negotiating with a bank at East Orange, and Loizeaux, for the purpose of giving satisfactory collateral for the desired loan, offered some shares of the stock of the Gander company. The plaintiff's interest in the lumber business of the defendants then was aroused into activity, and within a short time thereafter, he sought to place his son Raymond with the Loizeaux company. Raymond was a graduate of Princeton University, and had taken a course of forestry at Biltmore University, and had also reaped some experience by employment in the lumber industry. The conversation led up to an offer by Loizeaux that the son take charge of the Gander company's interest in Newfoundland. Loizeaux described the *locus in quo* with the flattering zeal of the average interested business man, and intimated that if the son were to represent the company, he, or

the father, must purchase some of its stock. Documents concerning the property were taken home by the plaintiff, and examined by himself and his son. The result of these conversations was that Raymond soon thereafter, by arrangement with Loizeaux, was sent to Newfoundland to examine the tract. He spent a month in that section in company with practical lumbermen and guides, and upon his return presented the situation in such a light to his father that within six weeks thereafter the latter purchased the stock, which forms the subject-matter of this litigation.

It is quite clear from the testimony that Loizeaux never explored the entire tract, and that he did not claim to have done so. The exhibits in the case, and the correspondence, make it manifest that his estimates of the quantity of lumber and his estimates of value were based upon his partial exploration, supplemented by the reports of the government, the guides and the lumbermen, as well as by the representations of Crofut and of Taylor.

That the plaintiff did not rely upon Loizeaux's representations is manifest, for he says his son went to the *locus in quo* "for the purpose of investigating the matter;" and the son says that his father instructed him "to take a general look at things there; size them up the best he could." And before leaving upon this mission of investigation, Loizeaux wrote the son: "I think I have made it clear to you that I saw only a very small portion of it. No doubt, for your own people's sake, as well as for your own and ours, you will take plenty of time and make a thorough investigation." The son's report was that the land presented a good prospect for the pulp business, and the energies of all concerned were thereafter directed to the purchase of pulp machinery for the erection of the necessary mill plant.

The testimony is extensive, but this view of it leads of necessity to the conclusion that the plaintiff's business acumen was aroused by the possibilities that this enterprise held out to his son, a young man especially trained for such a calling, an important field for the application of his education and talents; that while the representations of Loizeaux opened up

a horizon for invitation, investigation and speculation, they did not lead to the investment in the stock until after the expert report of the son had been received and fully considered by the father and son, as a basis for the investment.

It is manifest from the testimony that the plaintiff bargained with his eyes open to the situation, in the light of personal investigation and independent exploration, regardless of the views of Loizeaux, and that no effort was made or impediment interposed by these defendants to control or to interfere with him in making the most ample and satisfactory examination of the proposition. Such being the situation, the legal rule applicable thereto is familiar, that to maintain the action, the plaintiff must have acted upon the defendants' representation to his damage, and that the representations, conceding them to be false, were the inducing cause of the plaintiff's conduct. *Byard* v. *Holmes,* 34 *N. J. L.* 296; *Brachert* v. *Griswold,* 112 *N. Y.* 454.

If it appear that he relied upon the result of an investigation by himself and his agent, he cannot treat the representation of the defendants as fraudulent, because they were not the superinducing cause of his action. 2 *Add. Torts,* § 1218; *Pasley* v. *Freeman,* 3 *Fed. Rep.* 51; *Randall* v. *Hazelton,* 12 *Allen (Mass.)* 414; *Bank* v. *Maxwell,* 83 *Me.* 576; *Southern Development Co.* v. *Silva,* 125 *U. S.* 247.

Under such circumstances, mere statements or estimates as to quantities and estimates have been held to be mere expressions of opinion by the vendor. 2 *Am. & Eng. Ann. Cas.* 997, and cases cited; 2 *Add. Torts,* § 1189; *Haycraft* v. *Creasy,* 2 *East* 92.

Our examination of the case has furnished us with no testimony of an adequate character upon this subject that can lead a dispassionate mind to any conclusion other than that this plaintiff was not the victim of misrepresentation upon the part of the defendants, in the purchase of the stock, but that his action in that regard was the result of his own untrammeled and deliberate investigation, which presented the exact situation to him and to his son as fully and completely as it had been presented by a like investigation to the defendants.

If the land and its timber and other accessories of value were overvalued by the estimates of the defendants, the plaintiff was in a position to know that fact, as well as the resulting fact of the overcapitalization of the Gander company, before he made his investment.

His opportunity for investigation was complete, and the defendants apparently invited rather than retarded or obstructed him in making it.

Under such circumstances, he cannot reasonably insist that the views, even if extravagant as to value, or the estimate of lumber contained in the *locus in quo* entertained and announced by the defendants, were the inducing cause of the purchase and loss of which he complains.

The result of these views is, that while the question upon which the liability of the defendants depends is a proper one for submission to a jury, nevertheless, as we have herein indicated, the clear weight of the evidence in the case at bar does not support the verdict and for that reason the rule to show cause will be made absolute.