STATE CENTRAL SAVINGS BANK OF KEOKUK, Appellee, v. S. JANE UGLOW et al., Appellants.

No. 39650.

OCTOBER 15, 1929.

*Frank Wisdom* and *Donald F. Wisdom,* for appellants.

*Grant L. Hayes, Leonard J. Montgomery, James Huiskamp,* and *J. O. Boyd,* for appellee.

MORLING, J.—John C. Uglow died February 18, 1918, the owner of the land in controversy (and other land involved in the partition suit, but not involved here), subject to incumbrances. The defendant S. Jane Uglow is his widow, and the defendants Ruth Uglow Trullinger and Cecil Uglow and interveners Leonard Uglow, Elsie Uglow Bentley, Mary Uglow Larson, and John Uglow are his heirs. Earl T. Hoover was made administrator. On October 23, 1918, the widow brought suit for partition of the land in controversy (and other land) against the heirs, lienors, and administrator. John, Ruth, and Cecil, of the heirs, were then minors. Ruth is now married. Cecil is still a minor. Original notice in due form was properly served upon all of the heirs except Floyd, who filed answer, but who does not thereafter, in the partition suit or here, appear. Guardian *ad litem* for the minors was duly appointed, and answered for them. Decree establishing the shares, finding that the land could not be equitably divided, appointing Earl T. Hoover referee to make sale, fixing his bond at $20,000, ordering sale, appraisement, etc., was rendered January 4, 1919. The appraisement was duly made and reported, bond of referee filed and approved, notice of sale given, and sale of the land in question made to the defendant S. Jane. The referee reported the sale to the court April 1, 1919, as made for $20,000 cash, to be paid on delivery of deed. The report stated that, in order to comply with the sale, the purchaser must procure a mortgage, and the sale and agreement must be approved by the court. The court, April 1, 1919, approved the sale, and directed the referee to deliver deed "upon payment by her of the purchase price in

cash.'' Up to this point, the validity of the proceedings in partition is conceded.

Referee's deed dated April 5, 1919, was executed. It bears the clerk's certificate of the same date, more fully referred to later. This deed and certificate are recorded in the complete record, which is in evidence. The widow gave to the Keokuk Trust Company a mortgage dated April 1, 1919, for $10,000. The referee's deed and this mortgage were recorded April 7, 1919. The proceeds of the mortgage were used in paying existing mortgages on the land, which the abstract of title in evidence shows were given by decedent and his wife, defendant S. Jane. On October 24, 1919, the referee Hoover made his final report as referee, which will also be later referred to. On the same date, October 24, 1919, the court approved this report, discharged the referee, and released his bond.

The contention of the widow and heirs is that the purchase price was not in fact paid, in cash or otherwise; that the heirs have received nothing for their interests in the land; and that the proceedings in the partition suit after the approval of the sale were fraudulent. Plaintiff's claim is that it was the desire of the adult heirs that the widow should have the land, should be appointed guardian of the minors, should furnish the minors the same home and support that the adults had had on the home farm, and as the minors became of age, should make settlement with them; that for this purpose the adults, except Leonard, receipted in favor of the widow for their distributive shares in the proceeds of the land; that Leonard refused to contribute his share; but that his share, by his authority, was paid to him by application on notes owed by him at the bank of which Hoover was an officer. It is the plaintiff's claim that this arrangement and the receipts of the widow for her share and for the minors' shares and the receipts of the adults accordingly were fully disclosed to the court when the referee's final report was presented and acted upon.

Defendant John, in 1922, after becoming of age, brought suit for partition of this land. Later, a guardian was appointed for Ruth and Cecil. The guardian brought suit against the widow (defendant S. Jane) for annulment of the referee's deed and for accounting. These suits were dismissed without trial.

On May 5, 1924, S. Jane executed to plaintiff the mortgage

in suit for $10,000, the proceeds of which were used to take up the mortgage held by the Keokuk Trust Company. In February, 1927, the widow signed and placed of record a deed of the land in question to defendants Ruth and Cecil. The petition in this case was filed April 26, 1927, and is based upon default in payment of interest, whereby the maturity of the principal was accelerated.

The evidence (though in conflict) satisfactorily shows that it was the desire of the adult children, except Leonard, at the time of the partition proceedings, that the widow should have the land purchased by her and their interests in it, and provide for the minors, and it was intended that she should be appointed guardian. She never was appointed. The minor children continued to reside with her upon the land in question.

The attitude of the widow and heirs toward the property and their knowledge, as appears from their testimony and the other evidence, is well expressed by their counsel, as a witness, who, when asked whether the Uglows told him that there was at one time a partition suit brought by S. J. Uglow, answered:

"They must have told me about that, or I learned it in some other way. They know so little about the matters themselves. I did not learn a great deal from them. In fact, I haven't talked with them much. There are two, three, or four I never saw or spoke to until I saw them here in the court room."

Section 12341, Code of 1927 (Section 4262, Code of 1897), requires the referee in partition to "give a bond in a penalty to be fixed by the court, payable to the parties who are entitled to the proceeds, with sureties to be approved by the clerk, conditioned for the faithful discharge of their duties. At any time thereafter, the court may require further and additional security, * * *" This bond, among other things, is for the protection of the owners of the shares in the transmission of their title to the purchaser and in the realization of the purchase price. The referee here furnished such bond in the penalty of $20,000. It was approved. The referee was authorized and directed to collect the purchase money. If the referee violated his duty to the prejudice of the owners, they had the remedy to move to open the final order, to enable them to proceed on the bond. The minors were the wards of the court. The failure of the

guardian or of the court to protect their interests, if any, was error, but did not affect the jurisdiction or the validity of the partition and conveyance thereunder. The orders, until set aside, were conclusive that the purchase money had been paid in, and subsequent purchasers were under no duty to investigate that question. See *McLean v. Caldwell*, 178 N. C. 424 (100 S. E. 888); 31 Corpus Juris 1141; 35 Corpus Juris 63, 64; 47 Corpus Juris 569, 578.

The statute further provides:

"12344. After completing said sale, the referees must report their proceedings to the court, with a description of the different parcels sold to each purchaser and the price bid therefor, which report shall be filed with the clerk." (Code of 1897, Section 4265.)

"12345. If the sale is approved and confirmed by the court, an order shall be entered directing the referees, or any two of them, to execute conveyances; but no conveyances can be made until all the money is paid, without receiving from the purchaser a mortgage on the land so sold, or other equivalent security." (Code of 1897, Section 4266.)

"12346. Such conveyances, being recorded in the county where the premises are situated, shall be valid against all subsequent purchasers, and also against all persons interested at the time, who were made parties to the proceedings in the mode pointed out by law." (Code of 1897, Section 4267.)

The court had jurisdiction of the subject-matter and of the parties. The order of April 1, 1919, approving the sale and directing delivery of the deed upon payment of the purchase price in cash, was an intermediate order. The cause and the parties thereafter remained in court, and subject to its further action. The minors and their guardian *ad litem* representing them were in court as fully and unqualifiedly as were the adults. Delay of further proceedings to a later term did not operate to divest jurisdiction. It is urged that the court made no order confirming the deed, as certified by the clerk. The deed with the clerk's certificate upon it was spread on the record of the court. The certificate recites that:

"It appearing to the court that he [referee] has complied with all the requirements of the law and the orders and decrees

of this court in making the sale and deed, it was ordered by the court that said sale and deed be, and the same were, approved and confirmed, and by direction of said court the said approval is hereby certified * * *''

Though in the form of a certificate, the court record sets forth and records a finding that the referee had complied with all the requirements of the law and the orders and decrees of the court and an order that the sale and deed were approved and confirmed. See 42 Corpus Juris 464, 538. The court records, therefore, though irregular in form, set out the finding and order of the court.

It was the duty of the referee to make further report. He did so. He reported that he had made deeds in accordance with direction of the court, and that he ''took from her [defendant S. J. Uglow], in settlement of the consideration, her receipt for her distributive share, and her receipt for the share of her minor children, and the receipt of her children who were of age for their respective shares, and that, in addition thereto, no money was paid by said S. J. Uglow except what was required to settle the costs in said estate. * * * That he has no further funds on hand and no further duties to perform as such referee, and therefore asks the court to approve this his final report, and to discharge his bondsmen and relieve him from any further responsibilities herein.'' He thereby presented to the court for determination the question whether the former order had been complied with, whether the receipts for the distributive shares were the equivalent of cash,—in short, whether the purchase price had been paid. The cause and the parties were before the court. The court entered a final order, finding that:

''The referee has complied with the law and the orders and decrees of the court in making such report; that he has made full distribution of the proceeds coming into his hands.''

The court approved the final report, discharged the referee, and released his bond. If the court was mistaken in its determination of the fact or in its conclusion of law, he committed error, but was acting within his jurisdiction. The order was final and conclusive unless set aside or reversed on direct proceedings taken for that purpose, and it was as conclusive upon

the minors as upon the adults. *Reinsurance Life Co. v. Houser,* 208 Iowa 1226.

It is said that the order was void for fraud perpetrated on the court in procuring it, particularly fraudulent concealment. The evidence fails to show concealment or other fraud. If the case were in this respect as claimed by appellants, it would be, in substance, this: The referee asked for his discharge. He represented to the court that he had received the purchase price in cash, and concealed the taking of the widow's receipts for the minors' shares and the other receipts and the fact that the heirs had not received payment. On the showing which he made, he asked the court to find that he had complied with the law and the orders and decree of the court. The court so found, and thereby determined the truthfulness of the matter so presented. The court, acting within its jurisdiction, thereby determined adversely to appellants the matters now urged against the decree. Such adjudication cannot be collaterally assailed because of the alleged falsity (though fraudulent or perjured) of the showing of facts upon which it proceeded. *Graves v. Graves,* 132 Iowa 199; *Mahoney v. State Ins. Co.,* 133 Iowa 570; *Mason v. Messenger & May,* 17 Iowa 261.

The orders of the court approving the deed and the sale and the referee's report, including the method of payment, are conclusive, and not open to this collateral attack. *Reinsurance Life Co. v. Houser,* supra; *Cockrill v. Louisville & N. R. Co.,* 176 Ky. 148 (195 S. W. 435); *Traer Bros. v. Whitman,* 56 Iowa 443; *Welsh v. Koch,* 4 Cal. App. 571 (88 Pac. 604); *Turnbull v. Mann,* 99 Va. 41 (37 S. E. 288). It is said that the record was not signed. The absence of the signature of the judge to the record does not affect its force or validity. *Traer Bros. v. Whitman,* 56 Iowa 443; *Dullard v. Phelan,* 83 Iowa 471, 474.

A part of the proceedings in the partition suit here under attack were had before the same judge who tried the present action. Appellants complain that, during the progress of the trial, the judge gave expression to his personal knowledge of matters in controversy, and indicated a prejudiced state of mind, such that he could not fairly decide the case. Pending the taking of testimony, the appellants moved for a continuance, and alternatively asked for time to file application for change of forum, based on prejudice of the judge. The application was

denied. Some of the expressions of the trial judge complained of were occasioned by heated controversies and accusations between counsel and witnesses, which they now doubtless regret, and which had better be consigned to oblivion. The record fails to show that the trial judge was unfair or prejudiced. No ground for continuance was shown. The cause is triable here *de novo*. In reviewing the finding of facts, we have confined ourselves to the evidence in the case. The statements objected to result in no prejudice.

Appellants' counsel urge with great earnestness and sincerity that the minors have been defrauded of their patrimony. A perusal of the transcript of the evidence is not impressive of the soundness of the claim that any of the heirs, minors included, have suffered any substantial injustice.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.